Larry **FORTELNEY**, Brandon Stoup, David Carter, Chelsea Carter, Individually, and on behalf of all others similarly situated, Plaintiffs,

v.

**LIBERTY LIFE ASSURANCE COMPANY OF BOSTON**, The Bassett Law Firm, LLC, Greta Bassett, John R. Nelson, and Integrated Benefits, Inc., Defendants.

Case No. CIV–09–1205–F.

United States District Court,
W.D. Oklahoma.

May 16, 2011.

Jennifer S. Montagna, William B. Federman, Federman & Sherwood, R. Robyn Assaf, Oklahoma City, OK, for Plaintiffs.

Brian E. Robison, Russell Yager, Vinson & Elkins, Dallas, TX, Kristin M. Simpsen, Reid E. Robison, McAfee & Taft, Sarah K. Oberndorfer, Susanna M. Gattoni, Hall Estill, Oklahoma City, OK, Miriam M. Burke, Vinson & Elkins, Austin, TX, Carolyn J.

Fairless, Michael D. Alper, Michael L. O'Donnell, Wheeler Trigg & O'Donnell, Denver, CO, John H. Tucker, Theresa Noble Hill, Rhodes Hieronymus Jones Tucker & Gable, Tulsa, OK, for Defendants.

## ORDER

STEPHEN P. FRIOT, District Judge.

Before the court are Defendant Liberty Life Assurance Company of Boston's Motion to Dismiss Plaintiffs' First Amended Class Action Complaint (doc. no. 54), Defendants Bassett Law Firm LLC, Greta Bassett, and John R. Nelson's Motion to Dismiss Plaintiffs' First Amended Complaint (doc. no. 56) and Defendant Integrated Benefits, Inc.'s Motion to Dismiss Plaintiffs' First Amended Class Action Complaint (doc. no. 74). Upon review of all of the parties' submissions in support of and in opposition to the motions, the court makes its determination.

*Introduction*

Plaintiffs, Larry Fortelney, Brandon Stoup, David Carter and Chelsea Carter, bring this action individually and on behalf of similarly situated individuals who received long term disability benefits from defendant, Liberty Life Assurance Company of Boston, and were required to pay defendant, Liberty Life Assurance Company of Boston, for alleged "overpayments" after receipt of social security and/or workers' compensation benefits. In their First Amended Class Action Complaint ("Amended Complaint"), plaintiffs allege both statutory and common law claims against defendant, Liberty Life Assurance Company of Boston ("Liberty"), defendants, The Bassett Law Firm, LLC, Greta Bassett and John R. Nelson (collectively "the Bassett defendants") and defendant,

Integrated Benefits, Inc. ("IBI").[1] Plaintiffs seek actual and punitive damages and injunctive relief against defendants. Defendants, in their motions, seek dismissal of the Amended Complaint pursuant to Rule 12(b)(6) and Rule 9(b), Fed.R.Civ.P.

*Standard of Review*

The inquiry under Rule 12(b)(6), Fed. R.Civ.P., is whether the Amended Complaint " 'contains enough facts to state a claim for relief that is plausible on its face.' " *Ridge at Red Hawk, L.L.C. v. Schneider,* 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). To survive a motion to dismiss, plaintiffs must nudge their claims across the line from conceivable to plausible. *Id.* The mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the Amended Complaint must give the court reason to believe that these plaintiffs have a reasonable likelihood of mustering factual support for these claims. *Ridge at Red Hawk,* 493 F.3d at 1177. The court assumes the truth of plaintiffs' well-pleaded factual allegations and views them in the light most favorable to plaintiffs. *Id.* Pleadings that are no more than legal conclusions are not entitled to the assumption of truth; while legal conclusions can provide the framework of the Amended Complaint, they must be supported by factual allegations. *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009). When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.*

---

1. As set forth below, defendant, Bassett Law Firm LLC, assisted plaintiff, Larry Fortelney, in obtaining social security benefits. IBI did the same for plaintiff, David Carter and his daughter, plaintiff, Chelsea Carter. These de-

fendants also were involved in assisting plaintiffs, Larry Fortelney and David Carter, with their alleged "overpayment obligations" to Liberty. *See,* Amended Complaint, ¶ 4.

Rule 9(b), Fed.R.Civ.P., governs the pleading of certain special matters. Rule 9(b) provides in pertinent part: "In alleging fraud ... a party must state with particularity the circumstances constituting fraud.... Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." The requirements of Rule 9(b) are to be read in conjunction with the general pleading principles of Rule 8, Fed.R.Civ.P., calling for the pleadings to be "simple, concise, and direct, ... [and] be construed so as to do justice." Rule 8(d) and (e), Fed.R.Civ.P.; *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir.1997). As with Rule 8, Rule 9(b)'s purpose is to afford the defendant fair notice of plaintiffs' claim and the factual ground upon which it is based. *Id.* In order to plead fraud with particularity, plaintiffs' Amended Complaint must "set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Koch v. Koch Indus.*, 203 F.3d 1202, 1236 (10th Cir.2000) (quotations omitted). This means "'the who, what, when, where, and how: the first paragraph of any newspaper story.'" *Caprin v. Simon Transportation Services, Inc.*, 99 Fed.Appx. 150, 158 (10th Cir.2004) (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir.1990)).

*Allegations of Plaintiffs' First Amended Class Action Complaint*

Plaintiffs make the following factual allegations in the Amended Complaint, which, as previously stated, the court assumes for present purposes to be true, viewing them in a light most favorable to plaintiffs. *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d at 1177.

Liberty, an insurance company, issues group disability income policies through numerous employers throughout the United States. These policies provide long term disability benefits ("LTD benefits") to covered employees if they are unable to perform the material and substantial duties of their occupation due to injury or sickness.

One such policy ("LTD policy") is issued through OGE Energy Corp. ("OG & E") for its employees. *See,* Amended Complaint, ¶¶ 15, 21, and 22.

### A. *Plaintiff Larry Fortelney*

Plaintiff, Larry Fortelney ("Fortelney"), worked for OG & E. Fortelney contributed to the LTD policy issued by Liberty. In March or April of 2005, Fortelney was injured at work. He thereafter applied for LTD benefits under the LTD policy. *See,* Amended Complaint, ¶ 23.

By letter dated November 16, 2005, Liberty informed Fortelney that he qualified for LTD benefits. Liberty stated that Fortelney's date of disability was June 21, 2005, making him eligible for LTD benefits beginning on December 18, 2005, pursuant to the 180 day elimination period standard in the LTD policy. Liberty stated that the LTD policy required Fortelney to apply for social security benefits should his disability be expected to extend for twelve months. Liberty requested Fortelney to complete an enclosed Social Security/Reimbursement Agreement ("SSRA") and referred to an enclosed fact sheet about the advantages of applying for social security benefits. *Id.,* ¶ 24.

The fact sheet enclosed in the November 16th letter encouraged the filing of a claim for social security benefits and stated that recipients "typically receive a large retroactive payment from Social Security shortly after their claim is approved." It advised that "[m]uch of this money is essentially money that Liberty [has] advanced to you while you were awaiting Social Security's decision, and you must pay it back to Liberty immediately." The fact sheet, however, advised that the social

security cost of living increases are "yours to keep" and that it could amount to over $238,000 in additional benefits over 26 years. *See,* Amended Complaint, ¶ 24.

The fact sheet additionally stated that it was not necessary to hire a lawyer to assist with the social security process. It advised that if a Liberty case manager believed legal assistance was necessary, Liberty would provide it and would pay for it. It further stated that Liberty had identified legal representatives throughout the United States with a strong track record in securing social security benefits for their clients and if necessary, Liberty would put that expertise to work for the policyholder. *See,* Amended Complaint, ¶ 25.

On November 25, 2005, Fortelney signed the SSRA which provided in part:

> If disability benefits are approved I request that Liberty Life Assurance Company of Boston (Liberty Life) pay me my benefits with *no reduction* for estimated Social Security Disability benefits until Social Security makes a decision. I understand that this may result in an overpayment of disability benefits paid to me if Social Security subsequently awards benefits to me, and I understand that I must repay this overpayment to Liberty Life. In consideration of Liberty Life paying me a disability benefit with no reduction for estimated Social Security benefits until Social Security makes a decision, I agree to the following:
>
> * * *

> I agree to apply for Social Security benefits within 45 days of Liberty Life's written request and provide proof of such application.
>
> * * *

> If Social Security awards benefits to me, I agree that Liberty Life has a first lien on all such benefits to the extent of any overpayment or debt, and I agree to hold such Social Security benefits in a trust for the benefit of Liberty Life until the amount of Liberty Life's overpayment has been repaid in full.

> I agree to repay Liberty Life in full within the time period specified in my policy/plan provision.
>
> * * *

> ■ If I do not repay any overpayment due to Liberty Life in full, I understand Liberty Life will discontinue payment of benefits to me, including payments for insurance premiums and other deductions paid on my behalf, and Liberty Life may withhold future disability benefits until the overpayment is recovered in full. In addition, Liberty Life may also pursue other means permitted by law to collect the overpayment amount owed.

*Id.,* ¶ 26; *see also,* Ex. 2 to Liberty's supplement to motion to dismiss (doc. no. 64).[2]

A Liberty case manager placed Fortelney in contact with the law firm Bassett, Nelson & Associates ("BNA"), now known as defendant, Bassett Law Firm, LLC,[3] to

---

**2.** Plaintiffs' Amended Complaint omits some language from the paragraphs cited from the SSRA. The court has included the omitted language from the SSRA since the SSRA is referred to in the Amended Complaint, Liberty has provided the SSRA with its motion and the parties do not dispute its authenticity. In evaluating a motion to dismiss, the court "may consider documents referred to in the complaint if the documents are central to the plaintiff[s'] claim[s] and the parties do not

dispute the documents' authenticity." *Smith v. United States,* 561 F.3d 1090, 1098 (10th Cir.2009), *cert. denied,* —— U.S. ——, 130 S.Ct. 1142, 175 L.Ed.2d 973 (2010).

**3.** Defendant, Bassett Law Firm, LLC, has its main office in Columbia, Missouri. Plaintiffs alleged, on information and belief, that no member of the firm is licensed in Oklahoma. *See,* Amended Complaint, ¶ 16.

assist with filing a claim for social security benefits. In a letter dated March 3, 2006, defendant, John R. Nelson ("Nelson"), an attorney and then principal of BNA, enclosed several forms for Fortelney to complete, along with a document that listed and explained the forms he was asked to sign. The forms included the Appointment of Representative, the Social Security Fee Agreement, the Social Security Representation Agreement, the Consent to Share Information Regarding Social Security Disability Claim and the Client Overpayment Assistance Program Authorization. The Social Security Representation Agreement was described as the "contract [that] officially hires the BNA representative as your attorney and states the 'rules' governing our relationship." The Client Overpayment Assistance Program Authorization was described as follows:

> While you wait to receive a favorable decision on your Social Security Disability claim, your insurance company has advanced you benefits. As a result, when your Social Security claim is allowed, this creates an overpayment of long term disability benefits. To assist you in your repayment obligation to the insurance company, BNA will verify that the amount to be repaid was correctly calculated by the long term disability insurance carrier and send the repayment on your behalf. This added service is offered at no cost to you and frees you from the frustration of repaying the insurance company on your own. By sending the Social Security retroactive benefit amount to your attorney at BNA, you are relieved of the burden and confusion of the LTD repayment process. Your attorney will then return the balance of the funds not due to the carrier directly to you.

*See,* Amended Complaint, ¶ 27. On March 13, 2006, Fortelney executed the Client Overpayment Assistance Program Authorization, which specifically stated:

I, Larry Fortelney, hereby retain Bassett, Nelson & Associates LLP ("BNA"), in the event that I am awarded Social Security Disability benefits, to assist me in meeting my contractual obligation to reimburse Liberty Life Assurance Company of Boston—AZ under the terms of my Long Term Disability Insurance Policy. . . .

*I promise to undertake the following actions:*

> Notify BNA when I receive retroactive benefits from the Social Security Administration and the amount received.

> Forward a check made payable to Bassett, Nelson & Associates, LLP to be deposited in a trust account, for the total amount received for me and all eligible dependents.

*I authorize BNA to take the following actions on my behalf:*

> Notify Liberty Life Assurance Company of Boston—AZ of the amount of Social Security Disability benefits received for myself and all eligible dependents.

> Verify the correct amount of my Long Term Disability overpayment.

> Disburse funds to Liberty Life Assurance Company of Boston—AZ for reimbursement of LTD overpayment.

(Emphasis in original). *See,* Amended Complaint, ¶ 28.

Fortelney also executed the Consent to Share Information Regarding Social Security Disability Claim which provided:

> I understand that by signing this form, I am authorizing Bassett, Nelson & Associates, LLP, to share information about my Social Security Disability Claim, including medical, vocational, and award

data, with my long-term disability claims administrator....

*See,* Amended Complaint, ¶ 29.

Fortelney further executed the Social Security Representative Agreement which provided:

BASSETT, NELSON & ASSOCIATES, LLP, ATTORNEYS AT LAW, hereinafter referred to as "BNA" will provide legal services to the undersigned, Larry Fortelney ... "Client," on the terms set forth below.

\* \* \*

Scope of Services: Client retains BNA for the sole purpose of pursuing a claim for disability benefits under the Social Security Act ...

\* \* \*

Client: BNA is representing the Client, Larry Fortelney only in this matter. It is understood by Client ... that BNA's duty is to act in the best interests of the Client ...

\* \* \*

BNA will maintain Client's file for two years after this matter is concluded ... Two years after the conclusion of this matter, the file may be destroyed without further notice to Client.

\* \* \*

This Agreement contains the entire agreement of the parties. No other agreement, statement or promise made on or before the effective date of this Agreement will be binding on the parties.

*See,* Amended Complaint, ¶ 30.

On March 17, 2006, Nelson sent a letter to Fortelney notifying him that he had received the forms and authorizations. He stated that "I want you to know that my goal is to provide you with the finest representation. At the conclusion of your social security claim, I hope you will feel that I have represented you in a professional and efficient manner." *See,* Amended Complaint, ¶ 31.

On April 13, 2007, Leah Kanne, an attorney with BNA, sent a letter to Fortelney stating that due to reorganization of caseloads, she would be handling his case and hearing. She requested that he sign two forms to change his representation with the Social Security Administration. On May 1, 2007, Fortelney signed the Third Party Fee Agreement which stated that Fortelney, the client, retained Leah Kanne to represent him for his claims for disability benefits under the Social Security Act. On May 7, 2007, Fortelney executed the Appointment of Representative, appointing Leah Kanne, as his representative in connection with his claim for social security benefits. *See,* Amended Complaint, ¶ 32.

On January 10, 2008, Fortelney received a letter from Maren Mellem, an attorney with BNA, stating his case had been transferred to her. Fortelney executed another Third Party Fee Agreement retaining Maren Mellem to represent him in his claim for social security benefits. *See,* Amended Complaint, ¶ 33.

Fortelney received a letter from Maren Mellem dated March 18, 2008 with a "friendly reminder" to advise BNA if his long term disability benefits with Liberty end at any time because it would better equip her to assist him with his social security claim. It further stated: "We want to be sure that you realize that we are here to assist you and our services will not end *solely* because your insurance company has stopped your benefits for long-term disability." (Emphasis in original). *See,* Amended Complaint, ¶ 34.

On May 19, 2008, Liberty sent a letter to Fortelney thanking him for notifying it that he was awarded social security benefits. The letter instructed Fortelney to notify Liberty immediately when he received his social security benefits check.

Liberty stated that "during the time it took Social Security to make its decision, Liberty has paid you full disability benefits. In effect, we advanced you the money we expected Social Security would ultimately pay, and you signed an agreement to repay the advance upon receiving Social Security benefits.... You must repay any overpayment immediately...." *See,* Amended Complaint, ¶ 35.

On July 16, 2008, defendant, Bassett Law Firm, LLC, sent a letter to Fortelney advising of the receipt of a favorable decision on Fortelney's claim for social security benefits and enclosing the notice of award of $60,671.40 in past due benefits. The letter further stated:

> As we discussed previously, your disability plan requires Liberty ... to reduce your ... benefits by the amount of income received from Social Security. Because you received ... benefits with no reduction for Social Security benefits, Liberty ... in effect advanced you the money they expected Social Security would ultimately pay to you. You also signed an agreement with your insurance provider to repay this advance upon receiving Social Security benefits. Now that you have been awarded Social Security benefits, the Bassett Law Firm is here to assist you in repaying Liberty....
>
> Please check your bank account for a deposit from the U.S. Treasury or for a paper check in the mail from Social Security. When you receive the past due benefits from Social Security, please prepare a check, made payable to The Bassett Law Firm, in the amount of $60[,]671.40 and forward to our office.... In accordance with our Client Overpayment Assistance Program ... we will then confirm the net overpayment due under the terms of your ... policy and contact you for permission to pay that amount to Liberty ... Any

> remaining monies will be returned to you without delay.
>
> Please note that if full reimbursement is not made to Liberty ... they *may* refer your account to a collection agency. To avoid such action by the disability carrier, please forward the above amount to our office at your earliest convenience. Remember, our job is to make the repayment process as simple and pain-free as possible....
>
> \* \* \*
>
> We look forward to receiving your payment or response by July 31, 2008.

*See,* Amended Complaint, ¶ 36 (Emphasis in original).

Two days later, on July 18, 2008, Liberty sent a letter to Fortelney regarding the "Overpayment Calculation and Repayment." In that letter, Liberty made statements (similar to the statements made by defendant, Bassett Law Firm, LLC) about Fortelney's obligation to repay Liberty because Liberty had "in effect advanced [him] the money [it] expected Social Security would ultimately pay." Liberty however specifically informed Fortelney of what his reduction in benefits would be and attached an exhibit that "explain[ed] the calculation of [his] $59,121.30 balance." Liberty also stated that it would work with defendant, Bassett Law Firm, LLC, in collecting the overpayment. *See,* Amended Complaint, ¶ 38.

According to plaintiffs, Liberty's calculation of the alleged overpayment was grossly overstated. *See,* Amended Complaint, ¶ 39.

Fortelney wrote a check to defendant, Bassett Law Firm, LLC, for $59,121.30 on July 28, 2008. The check was deposited on August 7, 2008. Subsequently, on August 18, 2008, defendant, Greta Bassett, a principal of defendant, Bassett Law Firm, LLC, sent a letter to Liberty enclosing a

check in the amount of $59,121.30, stating it "cover[ed] the Net Overpayment Due for Fortelney." Maren Mellem advised Fortelney by letter that defendant, Bassett Law Firm, LLC, had forwarded the payment of $59,121.30 to Liberty and that it was the "amount due under the terms" of his LTD policy. She also advised that the firm considered his case closed and they were no longer representing him in the matter. *See,* Amended Complaint, ¶¶ 17, 40–41.

According to plaintiffs, despite representing that it would confirm the net overpayment due, defendant, Bassett Law Firm, LLC, never informed Fortelney that $59,121.30 was not the correct amount due to Liberty and never returned any funds to him.

On August 21, 2008, Liberty sent Fortelney a letter stating that it had received his check and it satisfied Fortelney's overpayment in full. *See,* Amended Complaint, ¶ 42.

### B. *Plaintiff Brandon Stoup*

Plaintiff, Brandon Stoup ("Stoup"), also worked for OG & E. On October 21, 2005, Stoup sustained injuries at work. On August 10, 2006, he was awarded workers' compensation benefits for those injuries. Liberty notified Stoup on June 7, 2007 that he was eligible for LTD benefits under the LTD policy. Liberty informed Stoup that his date of disability was November 21, 2006, making him eligible to receive LTD benefits as of May 20, 2007. Liberty requested that Stoup complete an Agreement Concerning Benefits and provide his notice of award of workers' compensation benefits. *See,* Amended Complaint, ¶¶ 43–44.

On June 12, 2007, Stoup executed the Agreement Concerning Benefits. The agreement provided:

In return for the advance payment of group disability benefits made to me by the Liberty Life Assurance Company of Boston which may be in excess of the amount due to me under the terms [of the LTD policy], I ... agree:

1) That I am not currently receiving any benefits from ... Workers' Compensation.

2) If I apply for Social Security benefits and/or Workers' Compensation benefits[,] I will notify Liberty Life Assurance Company of Boston.

3) If I ... receive any benefits payments ... I ... will immediately notify Liberty Life Assurance Company of Boston of such benefits payments and pay back any overpayment resulting from this award in accordance with my Policy provisions.

4) I understand that thereafter Liberty Life Assurance Company of Boston is entitled to integrate any amounts received from Social Security and/or Workers' Compensation with the benefits payable under the Policy in accordance with the terms of the Policy.

*See,* Amended Complaint, ¶ 45, Ex. 3 to Liberty's supplement to motion to dismiss. According to plaintiffs, Liberty's "advanced payment of group disability benefits" statement was made for the purpose of getting Stoup to sign the agreement. Plaintiffs allege that Stoup was already eligible for his benefits from Liberty when he signed the agreement. *See,* Amended Complaint, ¶ 45.

On September 15, 2008, the Workers' Compensation Court determined that Stoup had sustained consequential injuries as a result of the accident at work and awarded him additional benefits for permanent partial disability and disfigurement. *See,* Amended Complaint, ¶ 46.

On December 10, 2008, Liberty sent a letter to Stoup seeking $6,782.33 because of an alleged overpayment by Liberty due to Stoup's receipt of workers' compensa-

tion benefits. The letter demanded that Stoup send payment by December 24, 2008. *See,* Amended Complaint, ¶ 47.

On January 7, 2009, Stoup and his attorney sent a letter questioning the validity of the requested reimbursement. Liberty responded on January 8, 2009, attaching a copy of the Agreement Concerning Benefits signed by Stoup. On February 2, 2009, Liberty sent a "Second Request" letter to Stoup threatening that Liberty would refer the overpayment balance to their "external collection agency to assist with the recovery of this overpayment balance. . . ." *See,* Amended Complaint, ¶ 48.

Stoup's attorney sent a letter to Liberty on February 5, 2009, stating that workers' compensation benefits were exempt from collection under Oklahoma law. The attorney "also requested authority for the action so as to avoid harm to Stoup." *See,* Amended Complaint, ¶ 49.

Liberty responded on September 17, 2009, again enclosing the Agreement Concerning Benefits and citing policy provisions that allegedly entitled Liberty to the overpayment. Liberty stated that "[i]f we do not receive payment or a response from you by October 1, 2009, we will refer the overpayment balance to our external collection agency. . . ." *See,* Amended Complaint, ¶ 50.

## C. *Plaintiffs David and Chelsea Carter*

Plaintiff, David Carter ("Carter"), also worked for OG & E and contributed to the LTD policy issued by Liberty. Carter suffered major heart problems and applied for LTD benefits under the LTD policy. *See,* Amended Complaint, ¶ 60.

In a letter dated July 9, 2008, Liberty informed Carter that he qualified for LTD benefits. Liberty stated that Carter's date of disability was February 1, 2008,

making him eligible for benefits beginning on July 30, 2008. The letter stated that the policy required Carter to apply for social security benefits should his disability be expected to extend for twelve months. As with Fortelney, Liberty requested Carter to complete an enclosed SSRA. Liberty enclosed fact sheet advising about the advantages of applying for social security, and informed Carter that if legal assistance was required, Liberty would provide and pay for it.

Insisting that Carter apply for social security benefits, a Liberty case manager placed Carter in contact with defendant, IBI.[4] In a letter dated July 10, 2008 from attorney Otis L. Darby to Carter, Mr. Darby enclosed several forms for Carter's signature, including Appointment of Representative and Representation Agreement. The Representation Agreement provided that Carter retained Otis L. Darby, John Burris, Timothy J. Peters and Ted Norwood to represent him in his claim for social security disability income benefits. IBI also enclosed a Social Security Electronic Repayment Authorization form, which stated:

> To satisfy my responsibility under the terms of the Social Security repayment agreement I signed with Liberty Mutual, I authorize Integrated Benefits, Inc. (IBI) to take the following actions:
>
> Withdraw from my bank account, designated below, Social Security amounts deposited for me and all my dependents and transfer those payments to an account established at Premier Bank in Jefferson City, MO for the purpose of satisfying my repayment agreement. . . .

*See,* Amended Complaint, ¶ 62.

IBI also enclosed an Application for Disability Insurance Benefits that IBI had

---

4. IBI is a Missouri corporation. Plaintiffs allege, on information and belief, that no at-torney at IBI was licensed to practice law in Oklahoma. *See,* Amended Complaint, ¶ 20.

already completed for Carter's signature, as well as an Application for Child's Insurance Benefits for Carter's daughter, plaintiff, Chelsea Carter. *See*, Amended Complaint, ¶ 63.

When Carter did not immediately respond to IBI's letter of July 10, 2008 and return the enclosed forms, IBI sent another letter on July 30, 2008, with the same completed forms for Carter's signature. An IBI representative told Carter he had to apply for social security benefits in order to receive his disability benefits under his LTD policy. *See*, Amended Complaint, ¶ 64.

On August 8, 2008, Carter signed the SSRA that Liberty sent to him so that he could obtain his benefits under the LTD policy. The SSRA Carter signed was identical to that signed by Fortelney. *See*, Amended Complaint, ¶ 65; Ex. 2 to Liberty's supplement to motion to dismiss.

On August 10, 2008, Carter also executed the forms requested by IBI, including the Representation Agreement and Social Security Electronic Repayment Authorization. Carter also signed the Appointment of Representative that named Timothy J. Peters, attorney, as his main representative. It also listed, as accepting the appointment, John Burris, Otis L. Darby, Timothy J. Peters, "Esq." and Ted Norwood, "Esq." The box indicating the representative is an attorney was also checked. *See*, Amended Complaint, ¶ 66.

On December 17, 2008, Liberty sent a letter to Carter thanking him for providing a copy of his notice of award from the Social Security Administration. The letter stated that Liberty would begin reducing his benefit to offset his social security benefits. It further stated that Carter had to repay any overpayment immediately. Liberty strongly suggested that he set aside his retroactive payment from social security to repay the obligation. *See*, Amended Complaint, ¶ 67.

On December 28, 2008, Liberty sent a letter to Carter which stated:

As you know, your employer's disability plan calls for us to reduce your disability benefits by the amount of income received from other sources, including Social Security, for you and any eligible dependents. Since you received disability benefits for the period July 30, 2008 to November 30, 2008, with no reduction for Social Security benefits, we in effect advanced you the money we expected Social Security would ultimately pay. You also signed an agreement to repay this advance upon receiving Social Security benefits.

Your notice states that you currently receive monthly Social Security Disability benefits of $1,893.00. It also indicates that Social Security paid you retroactive benefits of $7,098.75 for the period of July 1, 2008 to November 30, 2008. Thereafter as outlined on the attached exhibit:

1. We have reduced your net benefit from Liberty from $3,133.81 to $1,240.81, to reflect your Social Security benefit.

2. The attached exhibit explains the calculation of your **$5,323.72** overpayment balance. **\*Note: You will have an additional overpayment once your dependent is awarded benefits.**

3. Liberty Life will work with IBI in regards to collecting this overpayment. You will be contacted by a representative from IBI regarding repayment of this overpayment. . . .

(Emphasis in original). The attachment stated that the overpayment due was $7,690.97 after Liberty deducted the amount it claimed it should have paid. Liberty then deducted $2,366.25 for "attorney fees" to calculate a "net overpayment due" of $5,324.72. *See*, Amended Complaint, ¶ 68.

IBI also contacted Carter to tell him he had to pay Liberty from his social security lump sum. IBI recovered the alleged "overpayment" directly from Carter's bank account by using the Social Security Electronic Repayment Authorization. *See,* Amended Complaint, ¶ 69.

On January 18, 2009, the Social Security Administration sent a notice of award to "David Carter for Chelsea Linn Carter" stating that plaintiff, Chelsea Carter, is entitled to child's benefits beginning July 2008. The notice also stated: "We have chosen you to be her representative payee. Therefore, you will receive her checks and use the money for her needs." The Social Security Administration stated that it would pay $5,731.00 around January 24, 2009 for the money due from July 2008 through December 2008. *See,* Amended Complaint, ¶ 70; Ex. 6 to Liberty's supplement to motion to dismiss.

On January 28, 2009, IBI e-mailed Liberty stating that it had mailed a check for $5,323.72 to Liberty. IBI stated that it was continuing to follow up on the dependent award information. IBI e-mailed Liberty on February 19, 2009 with the social security award information with respect to plaintiff, Chelsea Carter, stating that she had been paid on January 21, 2009. *See,* Amended Complaint, ¶ 71.

On February 23, 2009, Liberty sent a letter to Carter regarding the overpayment calculation because his "dependents were awarded Social Security benefits." The letter stated:

As you know, your employer's disability plan calls for us to reduce your disability benefits by the amount of income received from other sources, including Social Security, for you and any eligible dependents. Since you received disability benefits for the period July 30, 2008 to January 31, 2009, with no reduction for Social Security Dependent benefits, we in effect advanced you the money we expected Social Security would ultimately pay you.

Your notice states that you currently receive monthly Social Security Dependent Disability benefits of $1,001.00. Thereafter as outline on the attached exhibit:

1. We have reduced your net benefit from Liberty from $3,133.81 to $294.81, to reflect you and your dependents Social Security benefit.

2. The attached exhibit explains the calculation of your $5,735.44 overpayment balance.

3. Liberty Life will work with IBI in regards to collecting this overpayment. You will be contacted by a representative from IBI regarding repayment of this overpayment....

The attachment stated that the overpayment due was $13,426.41 after Liberty deducted the amount it alleged it should have paid. Liberty then deducted $2,366.25 for "attorney fees" and $5,324.72 for recovery of prior overpayment to calculate a "net overpayment due" of $5,735.44. According to plaintiffs, this amount was more than the lump sum amount the Social Security Administration stated it would pay for plaintiff, Chelsea Carter. *See,* Amended Complaint, ¶ 72.

During this time, IBI was also telling Carter that he was obligated to pay Liberty from Chelsea Carter's social security lump sum payment. *See,* Amended Complaint, ¶ 73.

On February 28, 2009, Carter received only $206.81 in benefits from Liberty after it offset $2,839.00 and withheld $88.00 in federal income taxes. *See,* Amended Complaint, ¶ 75.

On March 10, 2009, Liberty sent a letter to Carter which advised that Liberty would begin applying the monthly benefit of $294.81 toward the outstanding overpay-

ment of $5,735.44 resulting from the dependent award. Liberty further advised that the reduction would remain in place until the overpayment was recovered. *See,* Amended Complaint, ¶ 76.

Carter called the Social Security Administration and informed it that Liberty wanted him to send plaintiff, Chelsea Carter's social security benefits to them for an alleged overpayment. The representative for the Social Security Administration told Carter that it was illegal for him to use plaintiff, Chelsea Carter's money for anything other than her needs. *See,* Amended Complaint, ¶ 77.

On March 12, 2009, the Social Security Administration provided a Report of Confidential Social Security Benefit Information. The Social Security Administration representative stated the following:

> David Carter receives a benefit from Social Security for his disability. His daughter is also entitled to receive a benefit. He is her payee. That means that he is to use the money for her food, clothing and shelter. The money is not his income. It is not to be used as his income. It is not to be used to pay his bills or debts. The cash benefits used in any other way besides her needs is fraud. If you have any questions please contact me.

*See,* Amended Complaint, ¶ 78.

On March 30, 2009, Liberty ceased paying Carter any disability benefits. The explanation of benefits stated that it offset $2,839.00 for social security benefits and applied $294.81 as a benefit adjustment amount. Liberty also applied the $88.00 it previously withheld for taxes to pay itself, as opposed to paying it to the government as Carter had directed. *See,* Amended Complaint, ¶ 79.

On May 7, 2009, Liberty sent a letter to Carter after receiving correspondence from the Social Security Administration regarding social security benefits paid to Carter and his daughter. Liberty stated in the letter:

> The Social Security Administration is correct in stating that benefits paid to you on behalf of your daughter must be used for her welfare. You receive those benefits from Social Security and I am sure you are using them appropriately. When calculating the long-term disability benefit due you from Liberty, we are offsetting amounts identified as your dependent's SS disability benefit, which reduces the benefit amount you are entitled to receive from Liberty. Neither this provision nor this action in any way affects what you receive from Social Security or how you choose to use those funds. Further, any overpayment of disability benefits is against funds we have previously paid you for the same period that Social Security is now paying retroactively, and this amount includes the offset for dependent benefits as stated above. How you choose to pay this overpayment is your decision; should you not repay us by personal check or other means, we are administrating the contract language in Section 7, General Provisions, which states:
>
> Right of Recovery
>
> * * *
>
> Liberty may recover an overpayment by, but not limited to, the following:
>
> 1. requesting a lump sum payment of the overpaid amount;
>
> 2. reducing any benefits payable under this policy;
>
> 3. Taking any appropriate collection activity available including any legal action needed; and
>
> 4. placing a lien, if not prohibited by law, in the amount of the overpayment on the proceeds of any Other Income Benefits, whether on a periodic or lump sum basis.

It is required that full reimbursement be made to Liberty.

Therefore, we will continue to apply your net benefit of $294.81 towards this balance due.

*See,* Amended Complaint, ¶ 80.

Carter spoke to an IBI representative who told him he must pay Liberty from the lump sum attributable to plaintiff Chelsea Carter. Carter told the IBI representative about the Social Security Administration's notice that use of the funds in such a manner was fraud. Subsequently, a different IBI representative contacted Carter and told Carter that IBI had nothing more to do with the issue. The IBI representative said that IBI had not received any payment from plaintiff, Chelsea Carter and were not representing her. *See,* Amended Complaint, ¶ 81.

According to plaintiffs, Liberty has taken Chelsea Carter's past due social security benefits by withholding all benefits owed to Carter that he would have otherwise been paid. Liberty offsets Carter's LTD benefits by the amount of benefits plaintiff, Chelsea Carter, receives. However, plaintiffs allege that Liberty does not pay any extra benefits to policyholders who have dependents. Liberty also charged Carter the same premium it charged other policyholders whose benefits were not reduced by dependents' social security benefits. *See,* Amended Complaint, ¶¶ 82, 83.[5]

D. *Other Class Members*

Plaintiffs allege, on information and belief, Liberty seeks recoupment from all of its policyholders who receive funds from social security or workers' compensation for "overpayments." According to plaintiffs, the policyholders, entitled to LTD

benefits, are induced to execute agreements to repay Liberty for the "overpayments" from their social security or workers' compensation benefits.

Plaintiffs also allege, on information and belief, that Liberty seeks recoupment of "overpayments" from all of its policyholders whose dependents receive social security benefits. Plaintiffs allege that Liberty has either directly taken the lump sum social security payments received by these dependents or Liberty has obtained the funds by other means, such as deducting all of the policyholders' benefits to recoup the alleged "overpayments."

In the Amended Complaint, plaintiffs seek to prosecute a class action under Rule 23, Fed.R.Civ.P., and propose six subclasses. The first five subclasses are all individuals who received long term disability benefits from Liberty and

(1) assigned or paid funds to Liberty from payments received from the Social Security Administration ("Liberty/SS subclass");

(2) assigned or paid funds to Liberty from payments received from the Social Security Administration for the benefit of their dependents ("Liberty/SS payee subclass");

(3) assigned or paid funds to Liberty from payments received pursuant to Oklahoma Workers' Compensation law ("Liberty/WC subclass");

(4) retained the Bassett Law Firm, LLC, Greta Bassett, Leah Kanne, Maren Mellem or John Nelson as their legal counsel ("Bassett subclass");

(5) retained IBI as their legal counsel or social security representative ("IBI subclass").

---

**5.** The Amended Complaint also alleges facts relating to a Mark Smith. *See,* Amended Complaint, ¶¶ 51–59. However, Mr. Smith is not listed in the caption or named in the Amended Complaint as a plaintiff. No claims are alleged on his behalf. The allegations with respect to Mark Smith will be disregarded.

The sixth subclass proposed by plaintiffs consists of all dependents of Liberty policyholders whose social security benefits were taken by Liberty ("Liberty/SS dependent subclass").

*Claims Against Liberty*

The Amended Complaint (Counts I through X) alleges one federal claim and nine state law claims against Liberty. The claims and the plaintiffs who allege the claims are as follows:

A. *Federal Claim—Statutory*

Count I—Violation of Social Security Act, 42 U.S.C. § 407—Fortelney, Carter, Chelsea Carter, Liberty/SS subclass, Liberty/SS payee subclass and Liberty/SS dependent subclass

B. *State Claims—Statutory and Common Law*

Count II—Violation of the Oklahoma Workers' Compensation Act, 85 O.S. § 48—Stoup and Liberty/WC subclass

Count III—Fraud Under Oklahoma and Massachusetts Law—Fortelney, Stoup, Carter, Liberty/SS subclass, Liberty/SS payee subclass and Liberty/WC subclass

Count IV—Violation of 76 O.S. § 2—Deceit—Fortelney, Stoup, Carter, Liberty/SS subclass, Liberty/SS payee subclass and Liberty/WC subclass

Count V—Conspiracy Under Oklahoma and Massachusetts Law—Fortelney, Carter, Bassett subclass and IBI subclass

Count VI—Breach of Contract—Fortelney, Stoup, Carter, Liberty/SS subclass, Liberty/SS payee subclass and Liberty/WC subclass

Count VII—Violation of Massachusetts Unfair Trade Practices Act, Mass. Gen. Laws Ch. 93A § 2—All plaintiffs and all subclasses

Count VIII—Violation of 36 O.S. § 902—Excessive Premiums—Fortelney, Stoup, Carter, Liberty/SS subclass, Liberty/SS payee subclass and Liberty/WC subclass

Count IX—Unjust Enrichment—All plaintiffs and all subclasses

Count X—Conversion—All plaintiffs and all subclasses

*Claims Against Bassett Defendants*

The Amended Complaint (Counts XI–XVIII) alleges one federal claim and seven state law claims against the Bassett defendants. The federal claim and state law claims are alleged by Fortelney and the Bassett subclass.

A. *Federal Claim—Statutory*

Count XI—Violation of Social Security Act, 42 U.S.C. § 407

B. *State Claims—Statutory and Common Law*

Count XII—Fraud under Oklahoma and Missouri Law

Count XIII—Violation of 76 O.S. § 2—Deceit

Count XIV—Conspiracy under Oklahoma and Missouri Law

Count XV—Breach of Contract

Count XVI—Breach of Fiduciary Duty under Oklahoma and Missouri Law

Count XVII—Negligence under Oklahoma and Missouri Law

Count XVIII—Conversion

*Claims Against IBI*

The Amended Complaint (Counts XIX–XXV) alleges one federal claim and six state law claims against IBI. The federal law claim is alleged by Carter, Chelsea Carter and the IBI subclass. The state claims are alleged by Carter and the IBI subclass.

A. *Federal Claim—Statutory*

Count XIX—Violation of Social Security Act, 42 U.S.C. § 407

B. *State Claim—Statutory and Common Law*

Count XX—Fraud under Oklahoma and Missouri Law

Count XXI—Violation of 76 O.S. § 2—Deceit

Count XXII—Conspiracy under Oklahoma and Missouri Law

Count XXIII—Breach of Fiduciary Duty Under Oklahoma and Missouri Law

Count XXIV—Negligence Under Oklahoma and Missouri Law

Count XXV—Conversion

In sum, twenty-five claims are alleged in plaintiffs' Amended Complaint. Defendants, as stated, seek to dismiss all of the claims. Specifically, defendants seek to dismiss the federal statutory claims (violation of the Social Security Act, 42 U.S.C. § 407) under Rule 12(b)(6), Fed.R.Civ.P., for failure to state a claim upon which relief can be granted. As to the state statutory and common law claims, defendants seek dismissal on the basis that the claims are either preempted by the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1002–1461 ("ERISA") or they fail to state a claim upon which relief can be granted. Defendants further assert that the fraud and deceit claims are subject to dismissal because they are not alleged with particularity as required by Rule 9(b), Fed.R.Civ.P.

*Pertinent Provisions of LTD Policy*

The LTD Policy[6] provides in pertinent part:

When Liberty receives Proof that a Covered Person is Disabled due to Injury or Sickness and requires the Regular Attendance of a Physician, Liberty will pay the Covered Person a *Monthly Benefit* after the end of the Elimination Period, subject to any other provisions of this policy.

\* \* \*

*"Monthly Benefit"* means the monthly amount payable by Liberty to the Disabled ... Covered Person.

\* \* \*

To figure the amount of *Monthly Benefit:*

1. Take the lesser of:

 a. the Covered Person's Basic Monthly Earnings multiplied by the benefit percentage shown in the Schedule of Benefits; or

 b. the Maximum Monthly Benefit shown in the Schedule of Benefits; *and then*

2. *Deduct Other Income Benefits* and Other Income Earnings, (shown in the Other Income Benefits and Other Income Earnings provision of this policy), *from this amount[.]*

The Monthly Benefit payable will not be less than the Minimum Monthly Benefit shown in the Schedule of Benefits. However, *if an overpayment is due to Liberty, the Minimum Monthly Benefit otherwise payable under this provision will be applied toward satisfying the overpayment.*

Ex. 1 to Liberty's motion, Section 2, DEF–6/7, Section 4, LTD–1 (Emphasis added).

Other Income Benefits means:

1. The amount for which the Covered Person is eligible under:

---

**6.** As previously noted, in evaluating a motion to dismiss, the court "may consider documents referred to in the complaint if the documents are central to the plaintiff[s'] claim[s] and the parties do not dispute the documents' authenticity." *Smith*, 561 F.3d at 1098.

a. Workers' or Workmen's Compensation Laws

\* \* \*

4. The amount of Disability and/or Retirement Benefits under the United States Social Security Act ... which

a. the Covered Person receives or is eligible to receive; and

b. his spouse, child or children receives or are eligible to receive because of his Disability

\* \* \*

Other Income Benefits ... must be payable as a result of the same Disability for which Liberty pays a benefit. *The sum of Other Income Benefits ... will be deducted in accordance with the provisions of this policy.*

Ex. 1 to Liberty's motion, Section 4, LTD–22, LTD–23 (Emphasis added).

Liberty *will* reduce the Covered Person's Disability ... benefits by the amount of Other Income Benefits that we estimate are payable to the Covered Person and his dependents.

The Covered Person's Disability benefit *will not* be reduced by the estimated amount of Other Income Benefits *if* the Covered Person:

1. *provides satisfactory proof of application for Other Income Benefits;*

2. *signs a reimbursement agreement under which, in part, the Covered Person agrees to repay Liberty for any overpayment resulting from the award or receipt of Other Income Benefits;*

3. if applicable, provides satisfactory proof that all appeals for Other Income Benefits have been made on a timely basis to the highest administrative level unless Liberty determines that further appeals are not likely to succeed; and

4. if applicable, submits satisfactory proof that Other Income Benefits have been denied at the highest administrative level unless Liberty determines that further appeals are not likely to succeed.

\* \* \*

In the event that Liberty overestimates the amount payable to the Covered Person ..., Liberty will reimburse the Covered Person for such amount upon receipt of written proof of the amount of Other Income Benefits awarded (whether by compromise, settlement, award or judgement) or denied (after appeal through the highest administrative level).

\* \* \*

Liberty may help a Covered Person in applying for Social Security Disability Income Benefits. In order to be eligible for assistance the Covered Person must be receiving a Monthly Benefit from Liberty. Such assistance will be provided only if Liberty determines that assistance would be beneficial.

Ex. 1 to Liberty's motion, Section 4, LTD–24 (Emphasis added).

\* \* \*

Liberty has the right to recover any overpayment of benefits caused by, but not limited to, the following ...

3. the Covered Person's receipt of any Other Income Benefits.

Liberty may recover an overpayment by, but not limited to, the following:

1. requesting a lump sum payment of the overpaid amount;

2. reducing any benefits payable under this policy;

3. taking any appropriate collection activity available including any legal action needed; and

4. placing a lien, if not prohibited by law, in the amount of the overpayment

on the proceeds of any Other Income Benefits, whether on a periodic or lump sum basis.

It is required that full reimbursement be made to Liberty.

Ex. 1 to Liberty's motion, Section 7, GNP–4.

*Discussion*

A. *Social Security Claims*

Fortelney, Carter, and Chelsea Carter allege claims for violation of the Social Security Act, specifically, 42 U.S.C. § 407(a). *See,* Amended Complaint (Counts I, XI and XIX). Under § 407(a), the right to future payment of social security benefits is not "transferable or assignable" and funds paid or payable for social security benefits are not "subject to execution, levy, attachment, garnishment, or other legal process." [7]

Defendants assert that § 407(a) does not bar Liberty's practice of offsetting social security benefits against the amount of LTD benefits payable under the LTD policy. According to defendants, the social security offset against LTD benefits reduces a participant's LTD benefits but does not alter the social security benefits received by a participant or his dependents. Moreover, defendants assert that Liberty's implementation of the offset through the recoupment of LTD benefits advanced pending the receipt of social security benefits (the "overpayment") is permissible under § 407(a). Defendants maintain that case law specifically authorizes an insurance company, such as Liberty, to recoup the amounts it has advanced to a participant. In so doing, defendants contend that Liberty is not asserting a

right to the participant's social security benefits, rather it is seeking the return of the overpayment. Defendants also argue, as an additional basis for dismissal, that § 407(a) does not create a private right of action in favor plaintiffs.

In response, plaintiffs argue that defendants have mischaracterized the basis for their § 407(a) claims. Plaintiffs assert that their claims are not premised upon Liberty's contractual offset of social security benefits. They assert that their claims are based on the "illegal agreements assigning their Social Security money, the unlawful taking of their lump sum retroactive Social Security funds awarded to the policyholders and their dependents, and Liberty's practice of offsetting dependents' funds, which are not the policyholders' income under the law." *See,* plaintiffs' omnibus response, (doc. no. 73), p. 20. Specifically, plaintiffs assert that the SSRAs executed by Fortelney and Carter are prohibited under § 407(a). These agreements, plaintiffs assert, gave Liberty "a first lien" on their social security benefits and stated that the social security benefits were to be held "in trust" for the benefit of Liberty. Moreover, plaintiffs assert that while they do not have any evidence that defendants enforced the "lien" by way of a court action, defendants threatened to do so and these threats also constitute a violation of § 407(a).

In addition, plaintiffs assert that the Bassett defendants demanded that Fortelney execute the Client Overpayment Assistance Program Authorization, which required Fortelney to "promise" to forward a check to BNA for the total amount received as social security benefits. Plaintiffs contend that by such action, defen-

---

7. Section 407(a) provides in pertinent part:
 The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process. . . .

 42 U.S.C. § 407(a).

dants were trying to do indirectly that which it was impermissible to do directly and therefore defendants' actions violated § 407(a). Plaintiffs further assert that IBI required Carter to execute the Social Security Electronic Payment Authorization which gave IBI the authority to withdraw his social security benefits directly from his bank account to pay Liberty. Plaintiffs maintain that this agreement expressly assigned the social security benefits to IBI for the benefit of Liberty. Finally, plaintiffs contend that Liberty's recoupment of plaintiff Chelsea Carter's social security benefits by offsetting plaintiff Carter's LTD benefits in the amount of her social security benefits violated § 407(a). Plaintiffs assert that it is unlawful to take or deduct a dependent's social security benefits from her parent's LTD benefits because those social security benefits belong to the dependent and not the parent. Plaintiffs maintain that the dependent's social security benefits are not part of the parent's income stream and therefore cannot be used to calculate the parent's LTD benefits.

In their papers, plaintiffs additionally argue that the cases cited and relied upon by defendants to support their arguments in regard to the § 407(a) claims are from outside the Tenth Circuit. Plaintiffs contend these cases are not controlling, the factual circumstances are distinguishable and the cases were erroneously decided. Although the Supreme Court and the Tenth Circuit have not directly addressed the issues in this case, plaintiffs contend that the Supreme Court's decision in *Philpott v. Essex County Welfare Bd.*, 409 U.S. 413, 416, 93 S.Ct. 590, 34 L.Ed.2d 608

(1973), and the Tenth Circuit's decision in *Tom v. First Amer. Credit Union*, 151 F.3d 1289, 1292 (10th Cir.1998), are instructive and support plaintiffs' claims that defendants' actions violated § 407(a).

Upon review, the court concludes that dismissal of the § 407(a) claims is appropriate. Although defendants have challenged whether plaintiffs may bring a private right of action under § 407(a), the court, assumes without deciding, that § 407(a) creates a private right of action in favor of plaintiffs. Nonetheless, the court concludes that the allegations in the Amended Complaint fail to establish a violation of § 407(a) by the defendants.

■ Initially, the court finds that Liberty was authorized to require the offset of social security benefits paid to a policyholder and any dependents against the amounts payable to the policyholder under the LTD policy. Under the specific terms of the LTD policy, LTD benefits are reduced by "Other Income Benefits," which includes social security benefits that the policyholder "receives or is eligible to receive" and that "his spouse, child or children receives or are eligible to receive because of [the policyholder's] Disability." *See,* Liberty's motion, Ex. 1, LTD–1, LTD–22. Courts have enforced disability benefit plans which include such offset provisions. *See, Leonelli v. Pennwalt Corp.*, 887 F.2d 1195, 1198–99 (2nd Cir.1989); *Lamb v. Conn. Gen. Life Ins. Co.*, 643 F.2d 108, 109–12 (3rd Cir.1981), *cert denied,* 454 U.S. 836, 102 S.Ct. 139, 70 L.Ed.2d 116 (1981); *Dowell v. Aetna Life Ins. Co.*, 468 F.2d 802, 804–05 (4th Cir.1972).[8] Moreover, courts have determined that such an

---

**8.** The LTD policy, as hereinafter discussed, is an employee welfare benefit plan under ERISA. Offsetting other income received as social security benefits against long term disability benefits is not prohibited by ERISA. *Godwin v. Sun Life Assur. Co. of Canada,* 980 F.2d 323, 327 (5th Cir.1992) (validity of social

security and workers' compensation offsets against disability benefits is well established), citing *Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 514–515, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981) (integration of employee benefits with other sources of income available to employees is permissible.)

offset provision does not violate section 407(a). *Lamb*, 643 F.2d at 111.[9]

█ The court additionally concludes that Liberty was entitled to seek reimbursement of LTD benefits paid to Fortelney and Carter, without a reduction for social security benefits, when they received their lump-sum retroactive social security benefits. The LTD policy expressly provides that Liberty has a right to recover any "overpayment of benefits" caused by the policyholder's receipt of "Other Income Benefits." *See,* Liberty's motion, Ex. 1, GNP–4. The LTD policy also provides that Liberty may recover an overpayment by "requesting a lump sum payment" of the overpaid amount; reducing "any benefits payable" under the policy; taking any "appropriate collection activity available" or "placing a lien, if not prohibited by law, in the amount of the overpayment." *Id.* It further provides that full reimbursement is to be made to Liberty. *Id.* Plaintiffs additionally signed a reimbursement agreement which provided for the repayment in full of an overpayment. Courts have permitted equitable claims to be filed against claimants, seeking restitution of the overpayments under ERISA, 29 U.S.C. § 1132(a)(3). *See, Cusson v. Liberty Life Assur. Co. of Boston,* 592 F.3d 215, 230–232 (1st Cir.2010); *Dillard's Inc. v. Liberty Life Assur. Co. of Boston,* 456 F.3d 894, 900–901 (8th Cir. 2006); *Gilchrest v. Unum Life Insurance Co. of America,* 255 Fed.Appx. 38, 44–46 (6th Cir.2007). Courts have found these claims not to violate § 407(a) because the insurance company did not seek to recover the policyholder's social security benefits (although the amount in question was the same as the amount of the claimant's social security benefits), rather, the insurance company was seeking to recover in equity from funds the plan has already paid under the long term disability benefits plan. *See, Cusson,* 592 F.3d at 232; *Parent v. Principal Life Ins. Co.,* 763 F.Supp.2d 257, 261–62 (D.Mass.2011); *Schlenger v. Fidelity Employer Services Co., LLC,* 785 F.Supp.2d 317, 334–35, 2011 WL 1236156 *13 (S.D.N.Y. Mar. 31, 2011); *Mugan v. Hartford Life Group Ins. Co.,* 765 F.Supp.2d 359, 373–75 (S.D.N.Y.2011); *Bosin v. Liberty Life Assur. Co. of Boston,* 2007 WL 1101187 *11 (W.D.Mich. April 11, 2007).

In addition, a district court has permitted recoupment of an overpayment by withholding future benefit payments under a long term disability plan, finding that such action did not violate § 407(a). *Stuart v. Metropolitan Life Ins. Company,* 664 F.Supp. 619, 625 (D.Me.1987).[10] The court concluded that the recoupment for amounts not reimbursed was not a "transfer" under § 407(a). *Id.* Moreover, another district court decision permitted an insurer to receive a policyholder's retroactive social security benefits to reimburse the insurer for an overpayment when the policyholder chose to pay the benefits instead of having the insurer recover the overpayment by reducing the policyholder's future benefit payments. *Poisson v. Allstate Life Insurance Co.,* 640

9. In *Lamb,* the court also found that the offset of payments received by a claimant's dependent on account of a claimant's disability "does not transgress the policy undergirding the Social Security Act, 42 U.S.C. § 402," which provides disability benefits to dependent children.

10. Other courts have allowed the recoupment of an overpayment caused by a participant's receipt of social security benefits by retaining the future monthly LTD benefits until the overpayment is recovered in full. *See, DeFrancesco v. Nationwide Mut. Ins. Co.,* 2006 WL 923716 *2 (D.Conn. April 7, 2006) (citing cases); *see also,* 467 F.3d 1031, 1038 (7th Cir.2006) (recoupment of overpayments from future monthly benefits "fosters the integrity of a written plan and ensures the availability of funds for other participants.")

F.Supp. 147, 149 (D.Me.1986) ("The Defendant did not assert entitlement to the Plaintiff's Social Security benefits in any way. Rather, the Defendant asserted that its contractual obligation to the Plaintiff is payment of a dollar amount which maintains her income at a contractually agreed upon level, depending on other benefits she receives. The fact that Plaintiff ultimately received Social Security benefits for months past rather than present does not change the nature of the contract. Allstate sought return of an alleged overpayment, not a right to Plaintiff's Social Security benefits as such.").

In the case at bar, Liberty did not seek reimbursement of the overpayments to Fortelney and Carter by filing an equitable claim for restitution under § 1132(a)(3). The allegations of the Amended Complaint, however, reveal that as to the overpayment of LTD benefits to Carter based upon Chelsea Carter's receipt of retroactive social security benefits, Liberty withheld all LTD benefits owed to Carter to recover the overpayment. The court, agreeing with the district court in *Stuart*, finds that the withholding of future disability benefits until the overpayment based upon the social security benefits paid to Chelsea Carter was recouped was permissible and did not violate § 407(a). *Stuart*, 664 F.Supp. at 625. Moreover, such action was in accordance with the LTD policy and the SSRA executed by Carter. *See*, Liberty's motion, Ex. 1, GNP–4; Ex. 2 to Liberty's supplement to motion to dismiss.[11] In so finding, the court rejects plaintiffs' arguments urging

the court to disallow any offsetting of social security benefits of a policyholder's dependent against the policyholder's long term disability benefits as unlawful and unfair. *See, Lamb*, 643 F.2d at 112 (The offset of payments received by an insured's "dependents on account of [his] disability does not transgress the policy undergirding the Social Security Act."); *see also, Fahringer v. Paul Revere Ins. Co.*, 317 F.Supp.2d 504, 519 (D.N.J.2003); *see, Fortune v. Group Long Term Disability Plan for Employees of Keyspan Corp.*, 391 Fed. Appx. 74, 79–80 (2nd Cir.2010).

■ Turning to defendants' actions in recovering the overpayments to Fortelney and Carter based upon their receipt of retroactive social security benefits, the court finds that those actions likewise do not violate § 407(a). Although Liberty required plaintiffs to sign the SSRAs, the court concludes that those agreements are not assignments. While the SSRAs provide that Liberty has a "first lien" on the social security benefits and that the benefits are to be held "in trust," they cannot be construed so as to assign "the right of future payment" of social security benefits to Liberty. And although the SSRAs provide for a "first lien" on the awarded social security benefits, there are no allegations in the Amended Complaint that Liberty ever sought to enforce its "first lien" against plaintiffs. Therefore, none of the funds paid under the Social Security Act were subject to "execution, levy, attachment, garnishment, or other legal process." 42 U.S.C. § 407(a).[12]

---

11. Although the LTD policy provided that the "Monthly Benefit payable will not be less than the Minimum Monthly Benefit shown in the Schedule of Benefits," it also provided that if an overpayment was due to Liberty, "the Minimum Monthly Benefit otherwise payable under this provision will be applied toward satisfying the overpayment." *See*, Ex 1 to Liberty's motion, LTD–1.

12. In their briefing, plaintiffs, citing to *In re Handel*, 570 F.3d 140, 145–146 (3rd Cir. 2009), assert that a lien constitutes "other legal process" under section 407(a). The court finds the facts in this case distinguishable from *Handel*. In *Handel*, a law firm sought to enforce a charging attorney lien to collect fees owed from a client. The Third Circuit concluded that the "alleged lien falls squarely within the definition of 'other legal

■ The court also finds that neither the Client Overpayment Assistance Program Authorization nor the Social Security Electronic Repayment Authorization agreements constitute an assignment of "the right of future payment" of social security benefits to the Bassett defendants and IBI. In the former agreement, Fortelney "promise[d]" to "forward a check" to BNA for the "total amount [of social security benefits] received for me." *See,* Amended Complaint, ¶ 28. This language does not support a finding of an assignment of Fortelney's right to future payment of social security payments. As to the latter agreement, Carter authorized IBI to "[w]ithdraw from my bank account ... Social Security amounts deposited for me and all my dependents and transfer those payments to an account established at Premier Bank." *See, id.* at ¶ 62. The court likewise concludes that this language does not assign a right to any future payment in social security benefits.

■ The court rejects plaintiffs' argument that IBI's recoupment of the overpayment to Carter by withdrawing his retroactive social security benefits from his bank account in accordance with the Social Security Electronic Repayment Authorization agreement constitutes "other legal process." In support of their argument, plaintiffs rely upon the Tenth Circuit's ruling in *Tom v. First Amer. Credit Union.* In that case, an account holder sued a credit union for violation of § 407(a) when it seized or setoff the account holder's funds consisting of social security benefits for payment of a debt owed to the credit

union. The credit union argued that an equitable self-help remedy, such as a setoff, was not "other legal process" and was therefore outside the scope of § 407(a). The Tenth Circuit disagreed:

> When Congress enacted § 407, it intended to exempt Social Security funds from all creditors, regardless of whether they attempted to reach those funds by way of the court system or by way of self-help remedies. We thus hold that setoff constitutes "other legal process" under § 407 and that the Credit Union violated this section when it seized [the account holder's] Social Security payments.

*Tom,* 151 F.3d at 1293. After the Tenth Circuit's ruling in Tom, the Supreme Court, in *Washington State Department of Social and Health Services v. Guardianship Estate of Keffeler,* 537 U.S. 371, 123 S.Ct. 1017, 154 L.Ed.2d 972 (2003), specifically addressed the term "other legal process" as used in § 407(a). The court determined that such term had a very narrow meaning, and that such process:

> should be understood to be process much like the processes of execution, levy, attachment, and garnishment, and at a minimum, would seem to require utilization of some judicial or quasi-judicial mechanism, though not necessarily an elaborate one, by which control over property passes from one person to another in order to discharge or secure discharge of an allegedly existing or anticipated liability.

*Keffeler,* 537 U.S. at 385, 123 S.Ct. 1017. In light of the Supreme Court's ruling,[13] this court cannot conclude that IBI's with-

---

process.'" *Id.* In so doing, the court found that the laws cited by the law firm establishing charging liens envisioned the utilization of the courts to enforce the claims of liability. In this case, Liberty did not seek to enforce the "first lien" and there is no citation of authority which envisions the utilization of courts to enforce the "first lien."

13. The court also concludes that the Supreme Court's decision in *Philpott v. Essex County Welfare Bd.,* 409 U.S. 413, 93 S.Ct. 590, 34 L.Ed.2d 608 (1973) does not support a finding that IBI's actions or any of the other defendants' actions violated § 407(a). In *Philpott,* the State of New Jersey sought to attach a beneficiary's social security benefits as reimbursement for the costs of the beneficiary's care and maintenance. In so doing, the state

drawal of funds from plaintiff Carter's account pursuant to the Social Security Electronic Repayment Authorization agreement constitutes "other legal process" under § 407(a). There was no judicial or quasi-judicial mechanism utilized to obtain control over Carter's social security benefits. Based upon the ruling in *Keffeler*, the court likewise rejects plaintiffs' arguments that Liberty's use of the SSRAs and any alleged "threats of legal process" constitute violations of § 407(a).[14]

As none of the alleged actions of defendants challenged by plaintiffs in the Amended Complaint violate § 407(a), the court concludes that plaintiffs cannot state a claim upon which relief may be granted against defendants. The court therefore concludes that the claims of Fortelney, Carter and Chelsea Carter for violation of § 407(a) (Counts I, XI and XIX) are subject to dismissal under Rule 12(b)(6).[15]

### B. State Statutory and Common Law Claims

As to the remaining state statutory and common law claims, defendants argue that all of the claims are preempted by ERISA. Although the Amended Complaint fails to mention ERISA, defendants maintain that plaintiffs are in fact seeking additional benefits under the LTD policy, which is a "welfare plan" covered by ERISA. Defendants assert that any attempt by plaintiffs to recover additional benefits under the LTD policy can only be brought under section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B). However, defendants point out that plaintiffs have already received all that they are entitled to under ERISA and that they accordingly have no viable claim under ERISA for additional benefits. In addition, defendants contend that plaintiffs have not exhausted their administrative remedies. Defendants also argue that plaintiffs' claims are preempted by ERISA because they challenge the administration of the LTD policy and the propriety of processing and applying the terms of the LTD policy. Finally, defendants argue that even if the state claims are not preempted by ERISA, the fraud and deceit claims are not alleged with particularity as required by Rule 9(b) and each of the claims are subject to dismissal under Rule 12(b)(6).

Plaintiffs, in response, do not dispute that the LTD policy is an ERISA-covered plan. However, with the exception of their breach of contract claim against Liberty, plaintiffs contend that their state claims are not preempted.[16] According to plain-

---

used the judicial system. *See, Philpott,* 409 U.S. at 415, 93 S.Ct. 590 ("Respondent sued to reach the bank account"). None of the allegations in the Amended Complaint establish that any of the defendants utilized the judicial system to obtain plaintiffs' social security benefits or sought in any way to attach the social security benefits.

**14.** *See, Wojchowski v. Daines,* 498 F.3d 99, 107–110 (2nd Cir.2007) (holding that the Second Circuit's prior expansive definition of "legal process" which included the use of express or implied threats of process was no longer good law after the Supreme Court's decision in *Keffeler* ).

**15.** As additional authority in support of their arguments regarding the § 407(a) claims,

plaintiffs rely upon an unpublished state court order issued on January 10, 2011 by the District Court of Seminole County, State of Oklahoma, in *David L. Griffin v. American Fidelity Assurance Corporation,* CJ–2010–3. *See,* (doc. no. 83). The court finds the authority to be non-binding on the issue of whether defendants violated § 407(a) and also finds the authority to be unpersuasive.

**16.** Plaintiffs assert that their breach of contract claim against Liberty was alleged in the alternative. They maintain that if the court does not find their state claims for fraud, deceit, conspiracy, conversion, unjust enrichment and violation of the Oklahoma Workers Compensation Act are preempted, they will dismiss the breach of contract claim. Plaintiffs also request the opportunity to amend

tiffs, none of the state law claims "relate to" the LTD policy. Rather, plaintiffs contend that their claims are based on defendants' coercion to obtain unlawful agreements in violation of the Social Security Act and the Oklahoma Workers' Compensation Act. Plaintiffs assert that if the agreements were part of the plan administration, they should have been filed with the Secretary of Labor. Plaintiffs maintain that Liberty did not file them with the Secretary of Labor because they did not relate to administration of the plan. Plaintiffs contend that their claims only "relate to" the LTD policy to the extent that defendants intimidated plaintiffs into signing the agreements so that plaintiffs could obtain their LTD benefits. As to their OWCA claim, plaintiffs specifically argue that ERISA expressly establishes an exemption for state workers' compensation statutes and the Tenth Circuit has explicitly held that ERISA does not preempt the OWCA. Plaintiffs further argue that the claims of Chelsea Carter, the claims of Carter against IBI, and the claims of Fortelney against the Bassett defendants all escape preemption because Chelsea Carter, IBI and the Bassett defendants are not principal ERISA entities. Further, plaintiffs assert that their fraud and deceit claims are pled with the requisite particularity.[17] Finally, plaintiffs request leave to amend their complaint to add ERISA claims, if the court finds that the state claims are preempted. Plaintiffs contend that they were not required to exhaust their administrative remedies because exhaustion would be futile and inadequate.

Further, plaintiffs contend that Liberty has waived any exhaustion requirement.

In reply, defendants contend that plaintiffs' argument that their state claims escape preemption because they relate only to the reimbursement agreements, rather than the LTD policy, is refuted by the express terms of the LTD policy. Defendants point out that the reimbursement agreements are specifically referenced in the LTD policy, are an integral part of offset/reimbursement provisions of the LTD policy, and are a part of the LTD policy and its administration. Defendants contend that the very same reimbursement provisions contained in the reimbursement agreements are contained in the LTD policy. Defendants argue that plaintiffs' state claims indisputably "relate to" the administration of the reimbursement provisions of the LTD policy. In addition, defendants argue that contrary to plaintiffs' assertion, ERISA does not require that the reimbursement agreements be filed with the Secretary of Labor. Defendants maintain that no plan documents or plan descriptions are required to be filed with the Secretary of Labor. Therefore, defendants contend that plaintiffs' argument that the reimbursement agreements are not part of the LTD policy because they were not filed with the Secretary of Labor is ill-founded.

Defendants also contend that Chelsea Carter's claims are preempted by ERISA. They argue that Chelsea Carter is seeking additional LTD policy benefits for her father by challenging the offset/recoupment provisions in the LTD policy. Defendants

their complaint and assert the breach of contract claim and other relief under ERISA.

17. In their briefing, plaintiffs state that they wish to dismiss their claims against Liberty for violation of Massachusetts Unfair Trade Practices Act, Mass. Gen. Laws Ch. 93A § 2 (Count VII) and violation of 36 O.S. § 902—

Excessive Premiums (Count VIII) without prejudice. Defendants object to the dismissal without prejudice. They contend that the claims should be dismissed with prejudice as they are preempted. The court concludes as hereinafter discussed that the claims should be dismissed as preempted by ERISA.

contend that Chelsea Carter has no other claim. They maintain that Liberty never sought any reimbursement from Chelsea Carter or directly targeted her social security benefits. Defendants contend that Chelsea Carter's claims clearly relate to the LTD policy and are therefore preempted. Defendants object to a third amendment of the complaint to add the ERISA claims. Defendants contend that plaintiffs may not assert a claim for additional benefits under the LTD policy for the first time in this civil action. Defendants assert that the LTD policy spells out the required procedure for filing administrative claims, with which plaintiffs did not comply, and that plaintiffs cannot be excused from compliance with the procedure on the basis that defendants dispute plaintiffs' entitlement to the additional benefits. Finally, defendants argue that the court should deny plaintiffs leave to amend to add ERISA claims since plaintiffs have had ample opportunity to assert ERISA claims and elected not to assert them.

The ERISA preemption provision is set forth in 29 U.S.C. § 1144(a) and provides as follows:

> [T]he provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

29 U.S.C. § 1144(a).

■ Before preemption will be found, three requirements must be met. "There must be a state law, an employee benefit plan, and the state law must 'relate to' the employee benefit plan." *Airparts Co., Inc. v. Custom Ben. Services of Austin, Inc.*, 28 F.3d 1062, 1064 (10th Cir.1994) (quotation omitted). The issue before the court in this case is whether plaintiffs' state claims against defendants "relate to" the LTD policy.[18]

■ "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) (footnote omitted). Hence, even if a state law is not specifically directed toward the regulation of an ERISA plan or affects such a plan only indirectly, it can still be found to "relate to" a plan. *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 139, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990).

"There is no simple test for determining when a law 'relates to' a plan." *Airparts Co., Inc.*, 28 F.3d at 1064. The Tenth Circuit has recognized four categories of state laws that are preempted by ERISA: (1) laws regulating the type of benefits or terms of ERISA plans; (2) laws creating reporting, disclosure, funding or vesting requirements for such plans; (3) laws providing rules for calculating the amount of benefits to be paid under such plans; and (4) laws and common-law rules providing remedies for misconduct growing out of the administration of such plans. *David P. Coldesina, D.D.S., P.C., Emp. Profit Sharing Plan & Trust v. Estate of Simper*, 407 F.3d 1126, 1136 (10th Cir.2005).

■ At the same time, the Tenth Circuit recognizes that ERISA does not preempt all state law claims.

> [L]aws of general application—not specifically targeting ERISA plans—that involve traditional areas of state regulation and do not affect "relations among

---

**18.** It is undisputed that plaintiffs have alleged state law claims against defendants. The LTD policy is undisputedly a "welfare plan." *See,* 29 U.S.C. § 1002(1) (a welfare plan is a plan that provides "benefits in the event of sickness, accident, disability. . . .") And a welfare plan is an employee benefit plan. 29 U.S.C. § 1002(3).

the principal ERISA entities—the employer, the plan, the plan fiduciaries, and the beneficiaries"—often are found not to "relate to" an ERISA plan.

*Airparts Co., Inc.*, 28 F.3d at 1065. In addition, ERISA has no bearing on those state laws "which do [ ] not affect the relations among the principal ERISA entities, the employer, the plan, the plan fiduciaries and the beneficiaries as such." *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 990 (10th Cir.1999) (quotation and internal quotation omitted). "As a corollary, actions that affect the relations between one or more of these plan entities and an outside party similarly escape preemption." *Id.* (quoting *Airparts Co., Inc.*, 28 F.3d at 1065.)

So while the ERISA preemption provision is "clearly expansive," it is not limitless. *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655–62, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). "Some state actions may affect employee benefits plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw*, 463 U.S. at 100 n. 21, 103 S.Ct. 2890. "What triggers ERISA preemption is not just any indirect effect on administrative procedures but rather an effect on the primary administrative functions of benefit plans, such as determining an employee's eligibility for a benefit and the amount of that benefit." *Airparts Co., Inc.*, 28 F.3d at 1065. "Indeed, '[a]s long as a state law does not affect the structure, the administration, or the type of benefits provided by an ERISA plan, the mere fact that the [law] has some economic impact on the plan does not require that the [law] be invalidated.'" *Estate of Simper*, 407 F.3d at 1136 (quoting *Airparts Co., Inc.*).

### I. *Claims Against Liberty*

With the above principles in mind, the court concludes that plaintiffs' state claims against Liberty for fraud, deceit, conspiracy, breach of contract, unjust enrichment and conversion (Counts III, IV, V, VI, IX and X) are preempted by ERISA. The claims implicate the terms and administration of the LTD policy and challenge the calculation of the amount of benefits to be paid from the LTD policy. The claims also seek to remedy misconduct growing out of the administration of the LTD policy. Moreover, the claims, as alleged, affect the relations among the principal ERISA entities. The court opines that the state claims alleged against Liberty directly "relate to" the LTD policy, which is indisputably an ERISA-covered plan. Consequently, the court finds that the state claims are preempted.

Although plaintiffs argue that their state claims are not preempted because they relate to the reimbursement agreements (the SSRAs and Agreement Concerning Benefits) and not the LTD policy, the court disagrees. As pointed out by defendants, the reimbursement agreements are specifically referenced in the LTD policy. The LTD policy provides that the LTD benefits will be reduced by an estimate of the "Other Income Benefits" (social security and workers' compensation benefits) unless the policyholder "signs a reimbursement agreement under which, in part, the [policyholder] agrees to repay Liberty for any overpayment resulting from the award or receipt of Other Income Benefits." *See*, Ex. 1 to Liberty's motion, Section 4, LTD–24. Moreover, the reimbursement provisions contained in the LTD policy are also mentioned in the reimbursement agreements. *See*, Ex. 1 to Liberty's motion, Section 4, GNP–4. The court thus concludes that the reimbursement agreements are a part of the LTD policy and its ad-

ministration. In so concluding, the court rejects plaintiffs' argument that the reimbursement agreements are not part of the LTD policy because they were not filed with the Secretary of Labor. Section 1021(b) of Title 29 of the United States Code does not require that the agreements be filed.[19] Since the reimbursement agreements are part of the terms of the LTD policy and its administration, and plaintiffs' state claims against Liberty relate to the terms and administration of the LTD policy (and seek a remedy for misconduct growing out of the administration of the LTD policy), the court concludes that the claims are preempted. *See, Settles v. Golden Rule Ins. Co.*, 927 F.2d 505, 509 (10th Cir.1991) (The Tenth Circuit "has found that common law tort and breach of contract claims are preempted by ERISA if the factual basis of the cause of action involves an employee benefit plan.")

In addition, the court finds that the state law claims against Liberty for fraud, deceit, conspiracy, breach of contract, unjust enrichment and conversion, also challenge the calculation of the amount of plaintiffs' benefits. Specifically, with respect to the tort claims, plaintiffs allege that:

> Liberty also made material misrepresentations regarding the amount of the alleged overpayments ... Even assuming Liberty could legally request and require such overpayments, which it could not, Liberty overstated the amount by its own terms by understating the amount it owed under the policy after Class Members received Social Security and Workers' Compensation benefits.

**19.** Section 1021(b) provides:

The administrator shall, in accordance with section 1024(a) of this title, file with the Secretary—

(1) the annual report containing the information required by section 1023 of this title; and

*See,* Amended Complaint, ¶ 116 (Count III—fraud claim).

> Liberty also willfully deceived the Liberty Plaintiffs and Subclasses regarding the amount of the alleged overpayments Plaintiffs and the Class owed. Even assuming Liberty could legally request and require such overpayments, which it could not, Liberty overstated the amount by its own terms by understating the amount it owed under the policy after Liberty Plaintiffs and Subclasses received Social Security and Workers' Compensation benefits.

*See,* Amended Complaint, ¶ 122 (Count IV—deceit claim).

> Liberty, IBI and the Bassett Defendants acted in combination to commit the unlawful acts described above.

*See,* Amended Complaint, ¶ 128 (Count V—conspiracy claim).

> Liberty's calculation of the overpayments allegedly owed by Fortelney, Stoup, Carter and members of the Liberty/SS Subclass, Liberty/ SS Payee Subclass, and Liberty/WC Subclass ... were grossly overstated. Liberty understated the amount it owed under the policies after Liberty Plaintiffs and Subclasses received Social Security and Workers' Compensation benefits.

*See,* Amended Complaint, ¶ 151 (Count IX—unjust enrichment claim).

> Defendants wrongfully exerted dominion over the property of all Plaintiffs and Subclasses, specifically their Social Security and Workers' Compensation benefits.

(2) terminal and supplementary reports as required by subsection (c) of this section.

29 U.S.C. § 1021(b).

*See*, Amended Complaint, ¶ 155 (Count X—conversion).

As to the breach of contract claim against, the Amended Complaint alleges:

> Liberty further breached their contracts by demanding Liberty Plaintiffs and Subclasses repay it more than their contracts required.

*See*, Amended Complaint, ¶ 135 (Count VI—breach of contract).

In sum, the court concludes based upon these referenced allegations in the Amended Complaint that plaintiffs' state tort and breach of contract claims (Counts III–VI, IX, X) are preempted by ERISA because they challenge the calculation of the amount of benefits owed to plaintiffs. *See, Revells v. Metropolitan Life Ins. Co.*, 261 F.Supp.2d 1359 (M.D.Ala.2003) (state law claims of breach of contract and bad faith refusal to pay benefits based on defendants' reduction of disability insurance benefits resulting from the policy's social security set-off provision preempted by ERISA).

■■ As to plaintiff Stoup's claim against Liberty under the Oklahoma Workers' Compensation Act, specifically, 85 O.S. § 48 (Count II),[20] the court likewise finds that the claim is preempted. The court rejects plaintiffs' argument that the OWCA claim escapes preemption by virtue of 29 U.S.C. § 1003(b)(3). That section exempts from ERISA "any employee benefit plan if ... such plan is maintained solely for the purpose of complying with applicable workmen's compensation laws...." 29 U.S.C. § 1003(b)(3). The LTD policy is not a "plan" that is maintained for the purpose of complying with the workers' compensation laws. In their briefing, plaintiffs nonetheless argue that

the Tenth Circuit has explicitly held that ERISA does not preempt the OWCA. In *Contract Services Employee Trust v. Davis*, 55 F.3d 533 (10th Cir.1995), the Tenth Circuit, following the First and Ninth Circuits, held that ERISA does not preempt the Oklahoma workers' compensation law. *Id.* at 536. The provisions at issue in *Davis* were 85 O.S. §§ 61–64 which require employers to either obtain workers' compensation insurance or establish a self-insured plan. The plans established pursuant to these provisions would be exempt from ERISA under § 1003(b)(3). In the First Circuit case, *Combined Management, Inc. v. Superintendent of Bureau of Ins. of State of Maine*, 22 F.3d 1, 4 (1st Cir.1994), followed by the Tenth Circuit, the court stated that "[l]aws which relate *only* to welfare benefits plans exempt from ERISA's coverage [ ] fit safely under the umbrella of [§ 1003(b)(3) ]'s exemption." (Emphasis added). The court, however, citing to *District of Columbia v. Greater Washington Bd. of Trade*, 506 U.S. 125, 131–132, 113 S.Ct. 580, 121 L.Ed.2d 513 (1992), further stated that "some workers compensation laws might 'relate to' ERISA covered benefit plans, instead of, and in addition to plans exempt under [§ 1003(b)(3) ] and thus fall under the broad sweep of ERISA's preemption clause." *Combined Management, Inc.*, 22 F.3d at 4. In this case, the provision of the OWCA at issue is 85 O.S. § 48. That section can relate to both ERISA-covered benefit plans and those exempt under ERISA. The court therefore concludes that the Tenth Circuit's decision in *Davis* does not warrant a conclusion that plaintiff Stoup's claim un-

---

**20.** Section 48 provides in pertinent part:

Claims for compensation or benefits due under the Workers' Compensation Act shall not be assigned ... and shall be exempt from all claims of creditors and from levy, execution or attachment or other remedy for recovery or collection of a debt, which exemption may not be waived.

85 O.S. § 48.

der § 48 escapes ERISA preemption under § 1003(b)(3).

Plaintiffs further argue that plaintiff Stoup's § 48 claim against Liberty is not preempted because the "gravamen of this case is the unlawful collection scheme designed by the Defendants to fill their coffers." *See,* plaintiffs' omnibus response (doc. no. 73), p. 17. Although plaintiff Stoup is challenging the Agreement Concerning Benefits which Liberty required him to sign, this agreement is a reimbursement agreement referred to in the LTD policy. Plaintiff Stoup also attacks the reimbursement provisions set forth in the LTD policy. Consequently, plaintiff Stoup's § 48 claim relates to the LTD policy in that it challenges the terms and administration of the LTD policy. The court therefore concludes that the § 48 claim is preempted by ERISA.

■ As previously noted, plaintiffs state that they wish to dismiss their claims without prejudice for violation of the Massachusetts Unfair Trade Practices Act, Mass. Gen. Laws Ch. 93A § 2 (Count VII) and 36 O.S. § 902 (Count VIII—Excessive Premiums). Liberty, however, urges the court to dismiss the claims with prejudice because they are preempted by ERISA. The court concludes that the claims are preempted by ERISA because they challenge the administration of the plan. Consequently, the court concludes that claims should be dismissed on the basis of ERISA preemption. The dismissal will be without prejudice—but leave to amend will be denied because plaintiffs clearly cannot satisfy the exhaustion requirement.

Plaintiffs further argue that the state claims of Chelsea Carter are not preempted because she is not a principal ERISA entity. Plaintiffs rely upon the language in *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.,* and *Airparts Co., Inc. v. Custom Ben. of Austin, Inc.,* wherein the Tenth Circuit stated that "actions that affect the relations between one or more of these plan entities and an outside party [ ] escape preemption." *Woodworker's Supply, Inc.,* 170 F.3d at 990; *Airparts Co., Inc.,* 28 F.3d at 1065. The court, however, concludes that plaintiff Chelsea's claims of unjust enrichment and conversion (Counts IX and X) and violation of the Massachusetts Unfair Trade Practices Act, Mass. Gen. Laws Ch. 93A § 2 (Count VII) are preempted. In Count IX of the Amended Complaint relating to the claim of unjust enrichment, plaintiffs allege:

Liberty's LTD disability policy is also illegal and violates public policy because it calls Social Security benefits paid to dependents "Other Income," and it purports to allow Liberty to recoup and offset Social Security benefits paid to its policyholders' dependents. Social Security benefits paid to dependents are for the sole benefit and use of the dependent and are not to be used as income of the representative payee. Liberty has been unlawfully enriched by its illegal insurance policy and subsequent agreements it induced its policyholders to sign. . . .

Liberty has been unlawfully enriched in the amount of the Social Security benefits awarded to the dependents of its policyholders through direct recoupment and offsetting the benefits otherwise owed to its policyholders in the amount of dependent benefits. Social Security benefits paid to dependents are for the sole benefit and use of the dependent and should not be used to reduce Liberty's obligations under its LTD policies.

*See,* Amended Complaint, ¶¶ 152–153.

■ Chelsea Carter's unjust enrichment claim cannot be characterized as "affect[ing] the relations of one or more of [the] plan entities and an outside party." *Woodworker's Supply, Inc.,* 170 F.3d at 990. Rather, the unjust enrichment claim

affects the relations between the LTD policy and Carter, the policyholder. Chelsea Carter is challenging the offset/recoupment provisions of the LTD policy which were applied to her father. Her claim clearly relates to the terms and administration of the LTD policy. The court therefore concludes that the claim is preempted by ERISA. The fact that Chelsea Carter has no remedy under ERISA does not preclude the preemption of her claims. *Cannon v. Group Health Service of Oklahoma, Inc.*, 77 F.3d 1270, 1274 (10th Cir.1996).

The court likewise concludes that plaintiff Chelsea Carter's conversion claim (Count X) and her claim for violation of Massachusetts Unfair Trade Practices Act, Mass. Gen. Law Ch. 93A § 2 (Count VII) are preempted by ERISA. They clearly relate to the administration of the LTD policy and the calculation of the benefit formula by Liberty. Indeed, as to her conversion claim, Chelsea Carter avers that Liberty wrongfully exerted dominion over her social security benefits. According to the Amended Complaint, "Liberty has taken Chelsea's past due benefits from Social Security by withholding all benefits owed to Carter that he would have otherwise been paid ... Liberty offsets Carter's LTD benefit[s] by the amount of benefits Chelsea receives." In addition, as to her statutory claim, Chelsea Carter alleges that "Liberty's acts, practices and conduct, as alleged herein, are unfair to Chelsea Carter." As Chelsea Carter's claims involve the terms and administration of the LTD policy and the calculation of benefits under it, the court finds that the claims relate to the LTD policy. Consequently, the court finds the claims are preempted by ERISA.[21]

In sum, the court concludes that plaintiffs' state statutory and common law claims against Liberty (Counts II–X) are preempted by ERISA and therefore may not be maintained. Thus, the court finds plaintiffs' state statutory and common law claims against Liberty are subject to dismissal based upon ERISA preemption.

## II. Claims Against the Bassett Defendants and IBI

■ The court finds that Fortelney's state claims against the Bassett defendants for fraud, deceit, breach of contract, breach of fiduciary duty and negligence (Counts XII, XIII, XV, XVI and XVII) are not preempted by ERISA. The court reaches the same conclusion as to Carter's claims against IBI for fraud, deceit, breach of fiduciary duty and negligence (Counts XX, XXI, XXIII, and XXIV). Unlike the claims against Liberty, the court concludes that Fortelney's claims against the Bassett defendants and Carter's claims against IBI do not affect the structure, administration or type of benefits to be provided by the LTD policy. Nor do they seek to remedy misconduct growing out of the administration of the LTD policy. In addition, unlike the claims against Liberty, the court concludes that Fortelney's claims against the Bassett defendants and Carter's claims against IBI are not seeking additional benefits under the LTD policy. "[M]erely because [plaintiff's] damages would be based upon the amount of potential plan benefits does not implicate the administration of the plan, and is not consequential enough to connect the action with, or relate the action to, the plan." *Hospice of Metro Denver, Inc. v. Group Health Ins., Inc.*, 944 F.2d 752, 755 (10th Cir.1991).

The fraud and deceit claims brought by Fortelney and Carter involve misrepresen-

---

**21.** Plaintiffs also rely upon the unpublished state order in *Griffin* in regard to whether Chelsea Carter's conversion claim is preempt-ed by ERISA. The court finds the case to be nonbinding and unpersuasive.

tations purportedly made to plaintiffs by defendants in order to induce plaintiffs to engage the law firms for the purpose of securing the social security benefits and to execute certain agreements in regard to those benefits. Plaintiffs specifically allege that the Bassett defendants misrepresented that they would act in Fortelney's best interests. They also allege that IBI misrepresented to Carter that he was required to apply for social security benefits. Fortelney's breach of contract claim relates to the specific agreements signed by Fortelney when he engaged the Bassett defendants to represent him. Plaintiffs allege that these agreements were breached when the Bassett defendants failed to solely represent Fortelney and failed to act in his best interests. The breach of fiduciary duty and negligence claims alleged by Fortelney and Carter concern alleged breaches of duty arising out of the attorney—client relationships between plaintiffs and defendants. Plaintiffs allege that the Bassett defendants and IBI breached their duties by violating several rules of professional conduct, including rules relating to conflicts of interests. The court concludes that the claims of fraud, deceit, breach of contract, breach of fiduciary duty and negligence, are laws of general application—not specifically targeting an ERISA plan—that involve traditional areas of state regulation and do not affect the relations among the principal ERISA entities. *See, Airparts Co., Inc.,* 28 F.3d at 1066 (10th Cir.1994); *see also, Pacificare of Okla., Inc. v. Burrage,* 59 F.3d 151, 155 (10th Cir.1995) (medical malpractice claim against HMO through vicarious liability was not preempted by ERISA); *Gruber v. Bendos,* 2005 WL 2065234 *3 (D.Md. August 23, 2005) (participant's legal malpractice claim against

attorney who represented participant in challenging insurance company's decision to deny disability benefits not preempted by ERISA).

■ Defendants also challenge Fortelney and Carter's fraud and deceit claims under Rule 9(b), Fed.R.Civ.P. Upon review, the court concludes that the fraud and deceit claims are not pled with particularity as required by Rule 9(b). The Amended Complaint fails to "set forth the time, place, and contents of the false representation[s], the identity of the party making the false statements and the consequences thereof." *Koch,* 203 F.3d at 1236. In other words, the Amended Complaint does not provide " 'the who, what, when, where, and how' " for the claims. *Caprin,* 99 Fed.Appx. at 158 (quoting *DiLeo,* 901 F.2d at 627).

As an example, IBI, in its motion, challenges the alleged misrepresentation that Carter was required to apply for social security benefits. The court concludes that more particularity about this statement is required. In paragraph 64 of the Amended Complaint, plaintiffs allege that "[a]n IBI representative told Carter that he had to apply for Social Security benefits in order to receive his disability benefits under the Liberty policy." *See,* Amended Complaint, ¶ 64. Although the Amended Complaint refers in that same paragraph to a letter sent by IBI to Carter on July 30, 2008, it does not allege that the purported misrepresentation by the IBI representative was made in that July 30th letter. *Id.* If IBI allegedly represented to Carter "prior" to the signing of an reimbursement agreement [22] that he was required to apply for social security benefits, plaintiffs may be able to show that IBI's statement to Carter was false. Indeed,

---

**22.** The Amended Complaint alleges that Carter signed the SSRA on August 8, 2008. *See,*

Amended Complaint, ¶ 65.

the LTD policy allowed a policyholder to have his LTD benefits reduced by Liberty's estimation of the amount of social security benefits without having to apply for social security benefits. *See*, Ex. 1 to Liberty's motion, LTD–24.[23] However, if plaintiffs chose not to have the social security benefits estimated and signed the reimbursement agreements, then they were required to apply for social security benefits. *See*, Ex. 1 to Liberty's motion, LTD–24) (policyholder must "provide[ ] satisfactory proof of application for Other Income Benefits"); Ex. 2 to Liberty's supplement to motion to dismiss ("I agree to apply for Social Security Benefits within 45 days of Liberty Life's written request and provide proof of such application.") Therefore, if the IBI representative made the alleged statement after Carter elected to not to have his LTD benefits reduced by estimated social security benefits and signed the reimbursement agreement required by the LTD policy, the statement would be true and Carter would not be able to establish his fraud claim or deceit claim.

In addition, IBI challenges the alleged misrepresentation that IBI told Carter that "[he] had to send [his] Social Security lump sum payments to IBI and/or Liberty" and "[he] must pay [his] Social Security benefits to Liberty." *See*, Amended Complaint, ¶¶ 208, 214 and ¶¶ 69, 73. Plaintiffs may also be able to show that these alleged statements were false. Although LTD policy and the reimbursement agreements require the policyholders to repay Liberty in full for the overpayments, the LTD policy and reimbursement agreement also provide that Liberty may withhold future benefits until the overpayment is recovered in full. The LTD policy pro-

vided that even the minimum monthly benefit otherwise payable could be applied toward satisfying the overpayment. *See*, Ex. 1 to Liberty's motion, LTD–1. Indeed, in regard to the overpayment based upon Chelsea Carter's receipt of retroactive social security benefits, Liberty reduced Carter's benefits by the amount Chelsea Carter received. *See*, Amended Complaint, ¶ 83. In addition, plaintiffs did not have to pay the overpayment from their social security payments. Instead, the payments could be paid by other assets. Although Liberty "strongly suggested" that Carter set aside his retroactive social security benefit payment, *see*, Amended Complaint, ¶ 67, plaintiffs have not alleged that Liberty actually required Carter to repay the overpayment from his social security benefits. Furthermore, Liberty advised Carter that it would "work with IBI in regards to collecting this overpayment." *Id.* ¶¶ 68, 72.

The court therefore concludes that Fortelney and Carter's fraud and deceit claims should be dismissed without prejudice for failure to comply with Rule 9(b). The court, however, will grant plaintiffs leave to amend to allege the fraud and deceit claims with particularity.

As to the claim alleged against the Bassett defendants for breach of contract and as to the claims of negligence and breach of fiduciary duty alleged against the Bassett defendants and IBI, which the court has found not to be preempted, the court concludes that the claims survive dismissal under Rule 12(b)(6).

▆▆▆ The court notes that IBI has specifically challenged Carter's negligence and breach of fiduciary duty claims on the

---

**23.** Even if social security benefits were estimated, the policyholder could still apply for social security benefits, and in the event Liberty overestimated the amount payable to the policyholder, Liberty agreed to reimburse the

policyholder for such amount, upon the receipt of proof of the amount of social security benefits awarded or denied. *See*, Ex. 1 to Liberty's motion, LTD–24.

basis that Carter cannot point to a breach of duty arising from IBI's agreement to represent Carter before the Social Security Administration. The court, however, finds that Carter's claims are not premised upon IBI's representation of him before the Social Security Administration, but rather, the claims are based upon IBI's representation of Carter in repaying the alleged overpayment obligations to Liberty. Although the Amended Complaint does not allege an agreement between Carter and IBI to assist Carter in repaying the alleged overpayment obligations, the allegations, taken as true, show that IBI was in fact assisting Carter in the repayment. It was providing legal advice to Carter and the claims of negligence and breach of fiduciary duty are based upon IBI's representation in regard to the repayment of the overpayment obligations. The court concludes that Carter's claims of negligence and breach of fiduciary against IBI, as alleged, do state a claim upon which relief can be granted and these claims, as stated, survive dismissal under Rule 12(b)(6).

■■■■■ As to Fortelney and Carter's claims of conspiracy (Count XIV and Count XXII), the court finds that the claims fail to state a claim for relief to the extent they are based upon "unlawful acts" consisting of violations of § 407(a). Under Oklahoma law, a civil conspiracy itself does not create liability. An unlawful purpose or use of unlawful means is required. *Brock v. Thompson*, 948 P.2d 279, 294 (Okla.1997). The court has found in this order that defendants did not violate § 407(a). Therefore, plaintiffs cannot base their conspiracy claims on alleged violations of § 407(a). To the extent the conspiracy claims are based upon the alleged "unlawful acts" of Liberty, such as the alleged fraud and deceit, the court finds that the claims are preempted by ERISA. The court concludes that such claims implicate the terms and the administration of the LTD policy and the calculation of benefits by Liberty. To the extent that the conspiracy claims are based only upon the alleged "unlawful acts" of the Bassett defendants and IBI, the court does not find that the claim is preempted. The court further concludes that those claims survive dismissal under Rule 12(b)(6).

■■■■ The final state claim alleged against the Bassett defendants and IBI is conversion (Count XIV and Count XXV). The court has previously concluded in this order that the Bassett defendants and IBI did not violate § 407(a) in their conduct regarding the repayment of plaintiffs' overpayment obligations to Liberty. None of the actions taken by these defendants are sufficient to state a claim for relief under § 407(a). To the extent that plaintiffs' conversion claim is based upon defendants' purported violations of § 407(a), the court concludes that such claim is subject to dismissal under Rule 12(b)(6) because plaintiffs cannot show any violations of § 407(a). To the extent that plaintiffs' conversion claim is based upon funds being sent to defendants to assist plaintiffs in meeting the alleged overpayment obligations under the LTD policy and the SSRAs, the court finds that plaintiffs' claim is preempted by ERISA. Such a claim implicates the terms of the LTD policy and the calculation of benefits by Liberty. They challenge whether the amounts paid to defendants and sent to Liberty were owed under the LTD policy and SSRAs. Although the claim is against the Bassett defendants and IBI rather than Liberty, these claims clearly relate to the LTD policy and are preempted by ERISA.

### III. *Exhaustion of Administrative Remedies*

In their briefing, plaintiffs request that if the court concludes that ERISA

preempts their state claims, the court grant plaintiffs an opportunity to amend their complaint to add claims under ERISA. As found in this order, the court concludes that plaintiffs' claims against Liberty are preempted by ERISA.[24] Liberty argues that plaintiffs should not be granted leave to amend their complaint because the amendment would be futile in that plaintiffs have not exhausted their administrative remedies in regard to any ERISA claim.

ERISA contains no explicit exhaustion requirement. Nonetheless, the Tenth Circuit has determined that exhaustion of administrative remedies is an implicit prerequisite to seeking judicial relief. *McGraw v. Prudential Ins. Co.*, 137 F.3d 1253, 1263 (10th Cir.1998). This requirement "derives from the exhaustion doctrine permeating all judicial review of administrative agency action, and aligns with ERISA's overall structure of placing primary responsibility for claim resolution on fund trustees." *Id.* (citations omitted). Any other procedure would permit "premature judicial interference" and "would impede those internal processes which result in a completed record of decision making for a court to review." *Id.* Courts have eschewed exhaustion under two limited circumstances: first, when resort to administrative remedies would be futile; or second, when the remedy provided is inadequate. *Id.*

 Plaintiffs contend that exhaustion would be futile and inadequate because Liberty has disputed that plaintiffs are entitled to their social security and workers' compensation benefits. In order to satisfy the futility exception to the ex-

haustion doctrine, a plaintiff must establish that "it is certain that [his] claim will be denied on appeal, not merely that [he] doubts that an appeal will result in a different decision." *Rando v. Standard Ins. Co.*, 1999 WL 317497, *4 (10th Cir. May 20, 1999) (quoting *Lindemann v. Mobil Oil Corp.*, 79 F.3d 647, 650 (7th Cir.1996)). Plaintiffs' claim of futility is based only on supposition. They merely claim that because Liberty disputes entitlement to the benefits, the remedy is futile. However, success of a claim of futility requires a "clear and positive showing of futility." *Rando*, 1999 WL 317497 at *4; *see also, Getting v. Fortis Benefits Ins. Co.*, 5 Fed. Appx. 833 (10th Cir.2001) (conclusory statement that appeal would have been futile not sufficient to excuse exhaustion of administrative remedies).[25] The court concludes that plaintiffs' bare allegations of futility are not sufficient to support a conclusion that exhaustion of administrative remedies is not warranted. Contentious claims—especially claims that portend expensive litigation that might spawn even more litigation of the same genre—get resolved administratively all the time. Plaintiffs' bare averment of inadequacy of remedy is not sufficient to excuse exhaustion.

 In their briefing, plaintiffs also argue that the exhaustion requirement has been waived by Liberty. According to plaintiffs, Liberty failed to give any notice of their appeal rights or review rights after they took their social security and workers' compensation benefits. Because of a failure to give notice, plaintiffs contend that Liberty waived the exhaustion requirement.

---

**24.** The court has also found certain claims against the Bassett defendants and IBI to be preempted by ERISA. The court, however, does not conclude that plaintiffs have requested to amend their complaint to add any ERISA claims against the Bassett defendants

and IBI. Plaintiffs have not shown in their papers that they would have a viable ERISA claim against these defendants.

**25.** Unpublished decisions cited for persuasive value pursuant to 10th Cir. R. 32.1.

The court is unpersuaded by plaintiffs' waiver argument. The claim requirement is set forth in the LTD policy. There is no allegation that plaintiffs did not possess the LTD policy prior to filing suit. The court concludes that plaintiffs were given notice of their rights to file a claim and therefore Liberty did not waive enforcement of the exhaustion requirement.

Because the court concludes that plaintiffs have failed to meet their burden to show that exhaustion of their administrative remedies would be futile or that the remedy would be inadequate, and because they have failed to show that Liberty waived the exhaustion requirement, the court finds that another amendment to the complaint to allege the ERISA claims would be futile. The court therefore denies plaintiffs' request to amend the complaint to allege ERISA claims against Liberty. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (district court may withhold leave to amend based upon "futility of the amendment.")

## IV. *Recap of Court's Rulings as to Named Plaintiffs' Claims*

In light of the court's rulings in this order, the court finds as follows:

(1) Liberty's motion in regard to Stoup's state statutory and common law claims (Counts II, III, IV, VI, VII, VIII, IX and X) should be granted and Stoup's statutory and common law claims against Liberty are dismissed without prejudice as preempted by ERISA. As leave to amend to add ERISA claims has been denied, Stoup has no pending claims against Liberty and Stoup is no longer a party to this action.

(2) Liberty's motion in regard to Chelsea Carter's claims (Counts I, VII, IX and X) should be granted. Chelsea Carter's federal statutory claim against Liberty for violation of the Social Security Act, 42 U.S.C. § 407 (Count I), is dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Chelsea Carter's state statutory and common law claims against Liberty for violation of Massachusetts Unfair Trade Practices Act, Mass. Gen. Laws Ch. 93A § 2, unjust enrichment, and conversion (Counts VII, IX and X) are dismissed as preempted by ERISA.

(3) IBI's motion in regard to Chelsea Carter's federal statutory claim for violation of the Social Security Act, 42 U.S.C. § 407 (Count XIX) should be granted. Chelsea Carter's claim against IBI is dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

(4) As Chelsea Carter has no pending claims against Liberty and no pending claim against IBI, Chelsea Carter is no longer a party to this action.

(5) Liberty's motion in regard to Carter's claims (Counts I, III, IV, V, VI, VII, VIII, IX and X) should be granted. Carter's federal statutory claim against Liberty for violation of the Social Security Act, 42 U.S.C. § 407 (Count I) is dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Carter's state statutory and common law claims against Liberty (Counts III, IV, V, VI, VII, IX and X) are dismissed without prejudice as preempted by ERISA. As leave to amend to add ERISA claims has been denied, Carter has no pending claims against Liberty.

(6) IBI's motion in regard to Carter's claims (Counts XIX–XXV) should be granted in part and denied in part. Carter's federal statutory claim against IBI for violation of the Social Security Act, 42 U.S.C. § 407 (Count XIX) is dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Carter's fraud and deceit claims against IBI (Counts XX and XXI) are dismissed without prejudice under Rule 9(b) with

leave to amend to state the claims with particularity. Carter's conspiracy claim (Count XXII) is dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted to the extent it is based upon a violation of § 407(a) and is dismissed as preempted by ERISA to the extent it is based upon unlawful acts of Liberty. Carter's conversion claim (Count XXV) is dismissed under Rule 12(b)(6) to the extent it is based upon a violation of § 407(a) and is dismissed as preempted by ERISA to the extent it is based upon funds being sent to IBI to assist Carter in meeting the alleged overpayment obligation under the LTD policy and the Social Security Reimbursement Agreement.

Carter's breach of fiduciary duty claim and negligence claims (Counts XXIII and XXIV), and Carter's conspiracy claim (Count XXII) to the extent it is based upon the unlawful acts of IBI, remain pending.

(7) Liberty's motion in regard to Fortelney's claims (Counts I, III, IV, V, VI, VII, VIII, IX and X) should be granted. Fortelney's federal statutory claim against Liberty for violation of the Social Security Act, 42 U.S.C. § 407 (Count I) is dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Fortelney's state statutory and common law claims against Liberty (Counts III, IV, V, VI, VII, IX and X) are dismissed without prejudice as preempted by ERISA. As leave to amend to add ERISA claims has been denied, Fortelney has no pending claims against Liberty.

(8) The Bassett defendants' motion in regard to Fortelney's claims (Counts XI–XVIII) should be granted in part and denied in part. Fortelney's federal statutory claim against the Bassett defendants for violation of the Social Security Act, 42 U.S.C. § 407 (Count XI) is dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Fortelney's fraud and deceit claims against the Bassett defendants (Counts XII and XIII) are dismissed without prejudice under Rule 9(b) with leave to amend to state the claims with particularity. Fortelney's conspiracy claim (Count XIV) is dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted to the extent it is based upon a violation of § 407(a) and is dismissed as preempted by ERISA to the extent it is based upon unlawful acts of Liberty. Fortelney's conversion claim (Count XVIII) is dismissed under Rule 12(b)(6) to the extent it is based upon a violation of § 407(a) and is dismissed as preempted by ERISA to the extent it is based upon funds being sent to the Bassett defendants to assist Fortelney in meeting the alleged overpayment obligation under the LTD policy and the Social Security Reimbursement Agreement.

Fortelney's breach of contract, breach of fiduciary duty and negligence claims (Counts XV, XVI and XVII) and Fortelney's conspiracy claim (Count XIV) to the extent it is based upon the unlawful acts of the Bassett defendants remain pending.

## V. *Class Action Allegations Against Liberty*

As stated, the Amended Complaint includes class action allegations against defendants, including Liberty. No class certification motion has been filed and thus no class or subclass has been certified. Despite this fact, the court may and has proceeded with ruling on Liberty's motion to dismiss. *See, Manual for Complex Litigation (Fourth)* § 21.133 ("The court may rule on motions pursuant to Rule 12, Rule 56, or other threshold issues before deciding on certification").[26] Such ruling, how-

---

**26.** *See also,* 5 *Moore's Federal Practice,* § 23.81[2] (3d ed. 2011) and cases cited therein.

ever, binds only the named plaintiffs. *Id.* Nonetheless, because the motion to dismiss has been resolved in Liberty's favor vis-a-vis all of the named plaintiffs (leaving no claims remaining against Liberty by any of the named plaintiffs), and because leave to amend to add ERISA claims has been denied, the court concludes that the class action allegations against Liberty should be and are stricken from the Amended Complaint as essentially surplusage. Consequently, no claims or allegations remain pending against Liberty in this action.

*Conclusion*

Based upon the foregoing,

Defendant Liberty Life Assurance Company of Boston's Motion to Dismiss Plaintiffs' First Amended Class Action Complaint (doc. no. 54) is **GRANTED.** The named plaintiffs' request for leave to amend the Amended Complaint to allege ERISA claims against defendant, Liberty Life Assurance Company of Boston, is **DENIED.** The class action allegations against defendant, Liberty Life Assurance Company of Boston, are **STRICKEN** from the Amended Complaint.

Defendants Bassett Law Firm LLC, Greta Bassett, and John R. Nelson's Motion to Dismiss Plaintiffs' First Amended Complaint (doc. no. 56) and Defendant Integrated Benefits, Inc.'s Motion to Dismiss Plaintiffs' First Amended Class Action Complaint (doc. no. 74) are **GRANTED in part** and **DENIED in part.**

In light of the court's ruling in this order, plaintiffs Brandon Stoup and Chelsea Carter have no pending claims and they are no longer parties to this action.

Plaintiffs, Larry Fortelney and David Carter, are granted leave to file a Second Amended Complaint stating with particularity their fraud and deceit claims within 20 days from the date of this order. Failure to comply may result in dismissal of the fraud and deceit claims with prejudice

and this action shall proceed only as to the claims of plaintiff, Larry Fortelney, individually and on behalf of all others similarly situated, against defendants, Bassett Law Firm LLC, Greta Bassett, and John R. Nelson, for breach of contract, breach of fiduciary duty and negligence and conspiracy and as to the claims of plaintiff, David Carter, individually and on behalf of all others similarly situated, against defendant, Integrated Benefits, Inc., for breach of fiduciary duty, negligence and conspiracy.